### STAMPS v. TITTLE.

(Court of Civil Appeals of Texas. Galveston. March 10, 1914.)

1. OFFICERS (§ 82*)—TITLE TO AND POSSESSION OF OFFICE—INJUNCTION TO RESTRAIN OCCUPANCY OF OFFICE.

Though a court of equity will protect by injunction an incumbent of an office, who claims the same under color of title, as against an intruder, the incumbent must show that he himself is not a mere intruder and establish by proof some right to the office he occupies.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. § 82.*]

2. OFFICERS (§ 82*)—TITLE TO AND POSSESSION OF OFFICE—INJUNCTION.

Acts 31st Leg. (4th Called Sess.) c. 10 (Rev. St. 1911, art. 6175), authorized the Governor to appoint three prison commissioners with the advice and consent of the Senate with terms of two years, except the first ones, whose terms should be 8, 16, and 24 months. This act became effective during a recess of the Legislature, and the Governor, during such recess, appointed plaintiff as one of such commissioners. Shortly after such appointment was made, Const. art. 16, § 58, was amended, making the office a constitutional office with terms of six years, and providing that the terms of office of the commissioners, after the adoption of the amendment, "shall begin on January 20, 1913." The Legislature convened on January 14th, and on the 20th, the day the amendment went into effect, the Governor submitted plaintiff's appointment, together with several other recess appointments, to the Senate for confirmation, which was both by the Governor and the Senate treated as a recess appointment to the statutory office. Thereafter, during the same session, the Governor submitted plaintiff's name for appointment to the constitutional office, which was rejected by the Senate, and, after adjournment of the Legislature. he appointed defendant to the constitutional office and issued to him a commission. Held, that plaintiff's appointment was to the statutory office, and the fact that it was not confirmed until January 20th, the day the amendment went into effect and the statutory office ceased to exist, did not have the effect of rendering it an appointment to the constitutional office, and the office to which plaintiff was appointed being abolished on January 20th, and the constitutional office coming into existence on that date, and the defendant holding the commission of the Governor for such office, plaintiff, as to defendant, was neither a de jure nor a de facto officer with no title or color of title to the office, and hence was not entitled to an injunction restraining defendant from ousting him and taking possession of the office.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. § 82.*]

3. OFFICERS (§ 81*)—TITLE TO AND POSSESSION OF OFFICE.

Where a person holds a certificate of election or a commission of appointment to an office, he is entitled to the possession of the office; such certificate or commission being the highest and best evidence of title to the office until it is annulled by a judicial determination in quo warranto or other proceeding.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 113; Dec. Dig. § 81.*]

4. OFFICERS (§ 58*)—APPOINTMENT BY GOVERNOR.

The power of the Governor under the Constitution to make appointments to certain offices in case of vacancies applies equally to filling vacancies occurring during the session as well as recess.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 87; Dec. Dig. § 58.*]

Appeal from District Court, Walker County; S. W. Dean, Judge.

Suit by L. W. Tittle against W. O. Stamps. From an order granting a temporary injunction, defendant appeals. Reversed.

McDonald Meachum, of Houston, Shelley Grover, of Austin, and C. E. Lane, Asst. Atty. Gen., for appellant. Dean, Humphrey & Powell, of Huntsville, W. H. Shook, of Rusk, and C. L. Black and W. F. Ramsey, both of Austin, for appellee.

McMEANS, J. Appellee, L. W. Tittle, claiming to hold the office of prison commissioner under the appointment of the Governor of Texas, and that such appointment had been duly confirmed by the Senate of Texas, and alleging that during his incumbency of said office, and at a time when there was no vacancy in said office, the Governor undertook to appoint appellant, Stamps, as such officer, but that such appointment was ineffectual, and further alleging that W. O. Murray and S. J. Bass, also prison commissioners by virtue of the Governor's appointment, had conspired with appellant, Stamps, to oust him from his office and to ignore his rights to draw for terms and to discharge the duties of the office and to receive the emoluments thereof, and further alleging that, unless restrained, the appellant, assisted by the said Murray and Bass, would take forcible possession of the office, books, records, papers, and

moneys lawfully in the possession and legal custody of appellee, and thereby deprive him of the means of discharging the duties of his office, brought this suit in the district court of Walker county against the appellant, Stamps, and Murray and Bass, praying for the issuance of an injunction against the defendants perpetually restraining them, and each of them, from ousting, or attempting to oust, excluding, or attempting to exclude, or in any way interfering with appellee in the custody of the office, papers, records, or moneys belonging to the prison system, or in the discharge of the duties of the office of prison commissioner, and restraining them, and each of them, from deciding, or attempting to decide, by lot the terms of office to be held by the board of prison commissioners, and requiring the other members of the board to decide by lot with appellee the terms of office, as required by section 58 of article 16 of the Constitution of Texas, and to, in all things, recognize appellee as a member of the board of prison commissioners.

The bill for injunction was presented to Hon. S. W. Dean, judge of the district court of Walker county, in chambers, on the 7th day of October, 1913, and thereupon the judge set the application down for a hearing on October 20, 1913, and granted a temporary restraining order in the following words:

"In Chambers. Huntsville, Texas.
"October 7, 1913.
"This day coming on to be heard the foregoing petition, the court without passing upon the merits of same, pending notice and a hearing, orders that the clerk of this court, upon petitioner's filing bond in the sum of $1,000, payable to the within-named W. O. Murray, S. J. Bass and W. O. Stamps, and conditioned as required by law, issue a temporary injunction, as prayed for, directed to the said W. O. Murray, S. J. Bass and W. O. Stamps, and to be in effect until further orders of the court herein, and the same is set down for a hearing, upon the application for temporary injunction, Monday, October 20, 1913, at 10:30 a. m. in the courthouse at Huntsville, Texas, at which time the parties may appear in person or by attorney for the purpose of presenting written pleadings and either oral or written argument, or both, and the clerk of this court will issue and have served upon the defendants notice of such hearing and will incorporate therein a copy of the petition herein, together with this order.
"S. W. Dean,
"Judge Twelfth Judicial District."

Thereafter, on the same day, the defendants Stamps, Murray, and Bass, desiring a modification of the temporary restraining order, so as to permit the said Murray and Bass to exercise the functions and duties of prison commissioners pending the final disposition of the case, appeared in person before the district judge, and applied for such modification, whereupon the application was granted by the judge by the following order which in terms recites that the said "W. O. Stamps, W. O. Murray, and S. J. Bass having appeared before the court and submitting themselves to the jurisdiction of the court," etc., was duly entered.

"In Chambers at Huntsville, Texas.
"This Oct. 7, 1913, at 3:20 o'clock p. m.
"Whereas all parties to this cause, to wit, L. W. Tittle, petitioner, and W. O. Stamps, W. O. Murray and S. J. Bass, having appeared before the court and submitting themselves to the jurisdiction of the court, and it appearing to the court that the interest of the prison system and of the state of Texas requires the court to recognize W. O. Murray and S. J. Bass as prison commissioners, pending the final disposition of the case, and the injunction herein is hereby modified to the extent only that the said Murray and Bass are permitted to discharge the duties and functions of the office of prison commissioners, but they are forbidden to conspire with W. O. Stamps, or themselves, to oust, or attempt to oust, said L. W. Tittle from the office of prison commissioner or in any way to interfere with him in the discharge of the duties of the office of prison commissioner, and from deciding or attempting to decide by lot the terms of office of the members of the board of prison commissioners. This order to be in force until further orders are made herein.
"S. W. Dean,
"Judge 12th Judicial Dist."

Thereafter the respondent Stamps filed his plea in abatement, the ground of which was that the district court of Walker county was without jurisdiction because: (1) It appeared from the averments of the petition that the suit was against one illegally claiming or holding a state office; (2) that plaintiff was seeking a writ of injunction and mandamus against persons who are constitutional officers of the executive department of the state, and that the process prayed for is directed against them as to matters appertaining to their official duties as such officers, and that the Supreme Court is the only court in this state authorized by law to issue such process against such officers; and (3) that, if any district court in Texas has jurisdiction to hear and determine the matters in issue, it is the district court of Travis county in which the venue in a suit against persons holding or claiming a state office is expressly conferred.

Respondent also at the same time filed his answer in which he denied under oath the material allegations of plaintiff's bill, and set up the facts relied upon to show that he was the duly appointed, qualified, and commissioned prison commissioner, and entitled to hold the office, perform its duties, and discharge the functions thereof, and the facts relied upon by him to show that the plaintiff was not such officer de jure or de facto, and not entitled to perform the duties of the office or to receive the emoluments thereof. As substantially all the facts relied upon by the parties, those alleged by plaintiff to authorize the issuance of the injunction and those alleged by defendant to defeat it, are shown in our statement of the facts, we deem it unnecessary to here set out their allegations more fully, for to do so would require the extension of this opinion to an unreasonable length.

The case was heard by the judge in chambers upon the verified pleadings of the parties, and upon oral and documentary testi-

mony, whereupon the pleas of defendant Stamps to the jurisdiction and of venue were overruled, and the judge duly made and entered his order granting the temporary injunction in the terms of the temporary restraining order above set out, as modified by his later order of the same day, also set out, to continue in force until the next regular term of the district court of Walker county, and to continue in force thereafter unless modified, altered, or otherwise determined by the court and "unless the title and possession of the office of prison commissioner be determined in accordance with law between the said L. W. Tittle and W. O. Stamps; the title to the office not being here determined." From this order and decree the respondent W. O. Stamps has appealed.

We will state the facts in chronological order as nearly as possible.

Under the Acts of 1910, p. 143, brought forward in the Revised Statutes of 1911 as article 6175, the management and control of the prison system of this state was vested in a board to be known as the board of prison commissioners, composed of three men to be appointed by the Governor, with the advice and consent of the Senate, whose term of office should be two years from date of appointment, except those first appointed under the act, who, it was provided, should hold their offices, respectively, for 8, 16 and 24 months from the date of their appointment and qualification, the terms of each of those first appointed to be designated by the Governor. By virtue of this act the Governor appointed as members of the board Ben E. Cabell for the 24 months' term, L. W. Tittle for the 16 months' term, and R. W. Brahan for the 8 months' term, and each of them qualified and was commissioned as the law required, and assumed the duties and responsibilities of the office thereunder. At the time the Governor made these appointments, the Senate was not in session, nor did it thereafter convene until the 14th day of January, 1913.

In 1912 article 16 of the Constitution of Texas was amended by adding thereto a new section to be known as section 58, which reads as follows:

"Section 58 (article 16). The board of prison commissioners charged by law with the control and management of the state prisons, shall be composed of three members appointed by the Governor by and with the consent of the Senate, and whose terms of office shall be six years, or until their successors are appointed and qualified; provided that the terms of office of the board of prison commissioners first appointed after the adoption of this amendment shall begin on January 20, of the year following the adoption of this amendment, and shall hold office as follows: One shall serve two years, one four years, and one six years. Their terms to be decided by lot after they shall have qualified, and one prison commissioner shall be appointed every two years thereafter. In case of a vacancy in said office the Governor of this state shall fill said vacancy by appointment for the unexpired term thereof."

Within ten days after the convening of the Legislature on January 14, 1913, the Governor sent to the Senate the following message:

"To the Senate: Section 12 of article 4 of the Constitution provides that all vacancies filled by appointment by the Governor during recess of the Senate, shall be submitted to the Senate for its confirmation during the first ten days of its session. In accordance with said provision, I ask the advice and consent of the Senate to the appointment of the following named persons: * * * To be Attorney General, Hon. Jas. D. Walthal of Bexar county, vice Lightfoot, resigned. To be members of the board of prison commissioners, Hon. R. W. Brahan of Walker county; Hon. L. W. Tittle of Cherokee county. * * * To be Secretary of State, Hon. J. T. Bowman of Travis county, vice McDonald, resigned. To be Secretary of State, Hon. John L. Wortham of Harris county, vice Bowman, resigned. * * *

"Respectfully submitted,
"[Signed] O. B. Colquitt, Governor."

In addition to the names of the appointees given above, the message also gave the names of a large number of other appointees to various offices whose appointments were made to fill vacancies occurring during recess of the Senate. The message was typewritten, and its typewritten date was January 17, 1913, but this had been changed by pen and ink by writing over the figures "17" the figures "20"; but by whom or when this was done does not appear from the evidence, nor do we think, in the view we take, that which of the dates was the correct date of the message is material. J. T. Bowman, the Governor's private secretary, testified that the message was by him delivered to the Senate on January 17th, and that at that time it bore date of the 17th, but that the date was afterwards changed to the 20th, by whom or under whose authority he did not know; but there are other facts and circumstances tending to show that, whatever the date of the message, it was not laid before the Senate until January 20th. It is undisputed, however, that on January 20, 1913, all the appointments to fill vacancies made by the Governor during the recess of the Senate, and included in the message, were by the Senate confirmed, including the appointment of appellee Tittle and R. W. Brahan as members of the board of prison commissioners. No appointments of prison commissioners were made by the Governor to fill the constitutional office after the constitutional amendment went into effect on January 20, 1913, during the session of the Senate which lasted for two months or more thereafter unless the appointment of Messrs. Tittle and Brahan above mentioned was to fill such office. Mr. Tittle did not thereafter, within ten days after the Senate had confirmed his appointment, upon the message of the Governor above referred to, qualify by giving bond as required by law, nor did he offer to do so for many months thereafter, but, from the time of his appointment to fill the statutory office up to the time of the filing of this suit and the granting of the temporary in-

junction, he uninterruptedly and continuously acted as prison commissioner, discharging the duties of the office.

The Legislature met in special session July 21, 1913. Thereafter, on July 26, 1913, the Governor, by a message to the Senate of that date, asked the advice and consent of the Senate to the appointment of L. W. Tittle and R. W. Brahan to the constitutional office of prison commissioner, but by a subsequent message, dated August 4, 1913, recalled the names of the above-mentioned appointees from the further consideration of the Senate "at this time." Subsequently, on August 12, 1913, the Governor transmitted a message to the Senate asking its advice and consent to the appointment of Ben E. Cabell to the constitutional office of prison commissioner; the message in full being as follows:

"Governor's Office.

"Austin, Texas, August 12, 1913.

"To the Senate: I ask the advice and consent of the Senate to the following appointments: To be a member of the board of prison commissioners, Hon. Ben E. Cabell of Dallas county, Texas. In submitting the foregoing appointment, I desire to make the following statement for the information of the Senate. The general prison law under which the penitentiaries are now being managed was passed by the Fourth called session of the Thirty-First Legislature, and by its terms took effect January 20, 1911. Section 4 of the act provided for the appointment of a board of three commissioners, whose terms of office should be two years, provided, that of the first commissioners appointed, one should hold for eight months, one for sixteen months, and one for twenty-four months; thereafter the commissioners to be appointed for a term of two years, unless the Constitution should be changed providing for a longer term of office.

"In accordance with the provisions of said act, I appoint Hon. Ben. E. Cabell of Dallas county for a term of twenty-four months; Hon. L. W. Tittle of Cherokee county for a term of sixteen months, and Hon. R. W. Brahan of Walker county for a term of eight months. At the expiration of eight months Brahan was reappointed under the statute for a term of two years; at the expiration of sixteen months, Tittle was reappointed under the statute for a term of two years. On November 5, 1912, the people of Texas adopted an amendment to the Constitution making the prison commissioners a constitutional office and fixing the term of said office at six years. The amendment to the Constitution provided 'that the terms of office of the board of prison commissioners first appointed after the adoption of this amendment shall begin on January 20, of the year following the adoption of this amendment.' The original terms of two of the commissioners having expired under the statutory provision, they were reappointed in the manner prescribed by the statute.

"On January 17, 1913, I addressed a message to the Senate asking your advice and consent to all recess appointments, as provided by section 12 of article 4 of the Constitution. On that date the Senate met in its morning session at 10 o'clock, and, as shown by the journals, recessed at 11:50 a. m. until 2 p. m. At 2:35 p. m., Friday, January 17th, as shown by the journal of the Senate, you adjourned until Monday morning, January 20th, and, on account of your adjournment, the message of the Governor of January 17, transmitting his recess appointments, could not be delivered to the Senate until Monday morning, the 20th, at which time the recess appointments were confirmed. In this list of recess appointments were the names of L. W. Tittle and R. W. Brahan to be members of the board of prison commissioners. Mr. Cabell was not appointed by me at the expiration of his first term of twenty-four months because of recommendations which had already been made in the general message for a change in the form of prison management. Neither were the names of Messrs. Tittle and Brahan submitted for confirmation under the constitutional provision which went into effect on January 20, 1913, for the same reason. Neither of these gentlemen were appointed under the constitutional provision until their names were sent to the Senate until your convening in special session on July 21st last.

"The Attorney General holds that as a result of the fact that the Senate adjourned on Friday, January 17th, until Monday morning, January 20th, and did not until that date receive and act upon the recess appointments, and at which time they confirmed the recess appointments of Messrs. Tittle and Brahan, their terms of office thereby began under the constitutional provision on that date. He holds that by reason of this fact it was not necessary for the Governor to reappoint said commissioners, and that the Senate has no authority or jurisdiction over their confirmation. I have very great respect for the opinion of the Attorney General, and it is with great reluctance that I feel constrained to disagree with him on this point, for I do not concede that, because I could not deliver the message to the Senate earlier, the purpose and motive of the appointment of these gentlemen and the transmission of their names for confirmation as recess appointees could be changed into permanent appointments under the constitutional provision. However, out of deference to the opinion of the Attorney General, I am not transmitting in this message the names of Messrs. Tittle and Brahan, but submit to you the question for your own determination, and ask the Senate to determine for itself whether they will accept and approve the interpretation of the Attorney General. I consider it a matter of importance because it is a precedent which will be cited and used in the future, not only in this state but in other states, and therefore I think it important for the Senate of the state of Texas to determine the matter for itself.

"If the Senate should conclude not to approve the interpretation of the Attorney General, then I shall forthwith transmit the appointment of Messrs. Tittle and Brahan for your consideration.

"I have deemed it advisable to make the foregoing statement in order that the record in this matter may be clearly placed before you and be shown in your proceedings.

"Respectfully submitted,
O. B. Colquitt, Governor of Texas."

Upon the receipt of the foregoing message by the Senate, the following action was taken thereon: A simple resolution was offered by Senator Clark as follows:

"Whereas, the Governor by written message has advised that he did not intend to appoint Messrs. Tittle and Brahan to the constitutional office of prison commissioners, but his appointments were made on January 17th last and before the constitutional amendment went into effect and were for the statutory offices only, which expired beginning January 20th last, which contention on the part of the Governor we believe to be correct; and whereas, Messrs. Tittle and Brahan did not qualify within ten days after their appointment by executing bond and taking oath of office, as is required by law, and now for the first time have tendered to the Secretary of State their bonds, more than six months after their appointment;

and whereas, the Governor has signified his willingness to again place said parties' names before the Senate to be voted upon for the constitutional offices to determine whether or not the Senate shall confirm them: Therefore, be it resolved by the Senate, that it request the Governor to submit such names to the Senate as he may desire at once, to the end that it may pass upon the confirmation or nonconfirmation of such parties for said positions."

The resolution was read, and Senator Clark moved that same be adopted. Action recurred on the motion to adopt the resolution, and Senator Lattimore offered the following amendment:

"Amend resolution by inserting in the last paragraph thereof, after the word 'Senate,' the following: 'That it is the sense of the Senate that the appointees named by the Governor in his message of August 12, 1913, were recess appointees, and * * * '"

Action recurred on the pending business, the simple resolution by Senator Clark; the question being the amendment by Senator Lattimore, which was read and adopted. The resolution was then adopted as amended.

On August 14, 1913, the following resolution offered by Senator McNealus was adopted by the Senate:

"Resolved, that the Senate Journal of January 20, 1913, be corrected so as to properly reflect the date and contents of the Governor's message of January 17, 1913, concerning the nomination of penitentiary commissioners; also that the journal clerk be instructed to make the necessary corrections."

On August 14, 1913, the Governor transmitted to the Senate a message asking its advice and consent to certain appointments, among which were those of Messrs. Tittle and Brahan to be prison commissioners, and as to these he added, "The last two appointments are sent to you in compliance with the request contained in the following simple resolution which was passed by the Senate and presented to me on yesterday," and copying the resolution hereinbefore set out. The Senate at once acted upon the message and rejected the nomination of both Messrs. Tittle and Brahan. During the remainder of the session of the Legislature, no further appointments were made by the Governor to fill the constitutional office of prison commissioner, but after its adjournment the Governor appointed appellant, Stamps, who at once qualified by taking the oath and giving the bond prescribed by law, was duly commissioned by the Governor, and was beginning upon the discharge of the duties of the office when stopped by the granting of the injunction from which this appeal is prosecuted.

We will not discuss appellant's assignments of error in detail. It is enough to say that the points presented by them are sufficient as a basis for the discussion that follows, and the conclusions reached.

[1] The main question is this: Under the facts above stated, was the district judge justified in granting the temporary writ of injunction here complained of? It may be conceded that plaintiff's suit was not brought for the trial of the title to the office of prison commissioner, but that, claiming to hold the office, and having the actual custody of the books, papers, moneys, and paraphernalia belonging thereto, and being in the actual discharge of the duties thereof, he was entitled to be allowed to remain in the peaceable possession of the office and to discharge its duties until appellant, Stamps, had established a superior right thereto by a judgment of a court of competent jurisdiction. It is no doubt within the power of a court of equity to protect an incumbent of an office who claims the same under some color of title, in the possession thereof as against an intruder, but, in order to call for the interposition of a court of equity in such a case, it devolves upon him to show that he himself is not a mere intruder and to establish by proof some right to the office he occupies. This is so held in Callaghan v. Irvin, 40 Tex. Civ. App. 453, 90 S. W. 337, a case relied upon by appellee. The injunction, the issuance of which is here complained of, it will be observed was not issued upon ex parte hearing, but after the appellant, Stamps, had filed his sworn answer thereto raising the issue of title, and after the introduction of evidence bearing directly on the issue of title; and in this respect the case before us differs materially from Ware v. Welch, 149 S. W. 266, decided by the El Paso Court of Civil Appeals, a case strongly relied upon by appellee, from which we extract the following:

"Had the lower court, instead of issuing the injunction upon an ex parte hearing, set the case down for hearing upon the coming in of the answer, it might have disclosed that the true question involved was the title of the plaintiffs to the offices claimed by them; or had the defendants, after the issuance of the temporary writ of injunction, filed a motion to dissolve the same, supported by proper affidavits, it might also have been disclosed in that manner that this was the true question involved. This, however, is not the condition of the record, and no such question is presented to this court."

If, then, the El Paso court is correct in saying that the defendants could have raised the issue of title, or have disclosed that the question of title was the real issue involved by their answer or upon motion to dissolve, supported by affidavit, we think that the true issue, as presented to the court below, was one of title and not the mere right of one in possession of an office to remain in the undisturbed possession against the claim of an intruder or person claiming the title until such other should establish his title in a court of law. If, then, the question be one of title, we think that, under the facts stated, the title was vested in Mr. Stamps by his appointment by the Governor, his qualification, and the issuance of the commission to him by the properly constituted authorities; and therefore the injunction sought by Mr. Tittle should have been denied.

But the judgment granting the injunction recites that the title to the office was not thereby determined, and that the injunction granted should continue in force for the time named unless the title should sooner be determined in accordance with the law between the contending parties.

Treating the suit as one merely to restrain interference with a person in charge of and discharging the duties of an office, and assuming that it is the law, as stated in Callaghan v. Irvin, supra, that the plaintiff in such case is required to establish by proof some right to the office he occupies, we think that, under the facts of this case, Mr. Tittle was, as to appellant, Stamps, neither a de jure nor a de facto officer, having neither title nor color of title to the office of prison commissioner, but, was a mere intruder. We do not use the word "intruder" in any offensive sense, for the lofty character and honorable deportment of Mr. Tittle, in the walks of public and private life, forbid the ascribing to him of any sordid or ulterior motive in the assertion of his claim, or of any other motive than an honest but mistaken belief that he is entitled to the office and to perform its functions.

[2] It devolving, then, upon Mr. Tittle to establish that he has some right to the office he claims, has he shown this by proof? We think not. Mr. Tittle was appointed a member of the prison board by Governor Colquitt, during the recess of the Senate, on June 12, 1912, by virtue of the authority conferred by the act of 1910. The act expressly provides that such appointments should be made by the Governor "with the advice and consent of the Senate." When the act went into effect, the Senate was not in session, but the duty rested upon the Governor to make the appointment at the time the law became effective, and not to wait for the convening of the Senate in order to obtain its advice and consent. He performed this duty by appointing Messrs. Cabell, Tittle, and Brahan as prison commissioners. Section 12 of article 4 of the Constitution provides that all vacancies in state offices, except members of the Legislature, shall be filled, unless otherwise provided by law, by appointment of the Governor, and that, if the appointment is made during the recess of the Senate, the said appointee or some other person shall be nominated to the Senate during the first ten days of its session. The "nomination to the Senate" is required to be made obviously to obtain its advice and consent to the appointment theretofore made, for a subsequent sentence of the section provides that, if the nomination is rejected, the office shall immediately become vacant. As before shown, the next succeeding session of the Senate began on the 14th day of January, 1913, and within ten days thereafter the Governor, in the discharge of the duty imposed upon him by the section of the Constitution referred to, sent to the Senate a long list of names of persons appointed to office by him during the recess of the Senate, including the name of appellee, Tittle, as prison commissioner, and asked the advice and consent of the Senate to such appointments, and such appointments were by the Senate confirmed. That the appointment was to the office created by the statute, and not to one subsequently created by the adoption of the constitutional amendment hereinbefore copied, it seems to us admits of no doubt, and that it was to this appointment that the Governor asked the advice and consent of the Senate, and which the Senate confirmed, is not less doubtful. To hold otherwise would be to ignore the emphatic language of the Governor's message naming the appointees, and deny to the Governor the presumption of law that every officer has performed his duty under the law, until the contrary be shown; but of this more later on.

The adoption of the constitutional amendment in 1912 created a new office with the same name of officers but of greater lengths of tenure. It is provided therein that the terms of office of the board of prison commissioners, after the adoption of the amendment, "shall begin on January 20th of the year following the adoption of this amendment," etc. It is conceded, even urged, by Mr. Tittle's counsel that the creation of the constitutional office abolished the statutory office, and that the effect of the adoption of the amendment which became effective January 20, 1913, "was to terminate and absolutely end the statutory term of office of the three penitentiary commissioners who had theretofore been appointed"; and in support of this contention they cite Graham v. Roberts, 200 Mass. 152, 85 N. E. 1009, Cooley's Constitutional Limitations, 276, and Shelby v. Johnson, Dallam, Dig. 598. With this contention we readily agree. The statutory office being thus abolished, in what attitude did it leave Messrs. Cabell, Tittle, and Brahan with reference to both the statutory office and the constitutional office? That they no longer held the statutory offices is manifest, because such offices had passed out of existence. They certainly were not hold-overs for the same reason. They certainly did not hold the constitutional offices because they had not been appointed thereto by the Governor, unless the effect of the Governor's message of January 17th was to so appoint them. To hold that it did have this effect would be, as we said before, to ignore the emphatic language of the message itself. The language is not of the least doubtful import.

"Section 12 of article 4 of the Constitution provides that all vacancies filled by the Governor during recess of the Senate shall be submitted to the Senate for its confirmation during the first ten days of its session. In accordance with its provision, I ask the advice and consent of the Senate to the appointment of the following named persons."

If there should be any doubt that the Senate's advice and consent was there asked to

the appointment of the prison commissioners for the statutory office, that doubt should be dispelled by what the Governor himself said in his message to the Senate on August 12, 1913:

"Neither of these gentlemen (Tittle and Brahan) were appointed under the constitutional provision until their names were sent to the Senate until your convening in special session on July 21st last." (Their names were subsequently withdrawn before the Senate acted upon them.)

If, after this positive declaration, any doubt should exist, then we think that the construction placed upon the message of January 17th by the Senate itself is entitled to weight, and that construction was that:

"The Governor did not intend to appoint Messrs. Tittle and Brahan to the constitutional offices of prison commissioners, but his appointments were made on January 17th last, and before the constitutional amendment went into effect, and were for the statutory offices only which expired January 20th last."

Again, the Senate was in session when the constitutional office came into existence. If the Governor had intended to then fill the offices, would he not have done so by a present appointment and have asked the advice and consent of the Senate thereto, rather than to one made during the recess of the Senate?

Again, it is a matter of history in this state that Jas. D. Walthall was in 1912, during the recess of the Senate, appointed Attorney General, vice Hon. Jewell Lightfoot resigned, and that he was succeeded by Hon. B. F. Looney, who was elected during that year and qualified in 1913 prior to January 17th, the date of the Governor's message; yet the Governor asked the consent of the Senate to Mr. Walthall's appointment, although he had served out the remainder of the term for which he had been appointed, and his successor had qualified and taken possession of the office. This merely emphasizes the fact that the Governor's appointments were what they purported to be, viz., recess appointments. If Mr. Looney, after qualifying, had died or resigned before the message had been sent to the Senate, would this, by any sort of legal legerdemain, have made Mr. Walthall Attorney General for the term for which Mr. Looney had been elected? The Governor also sent in the names of three appointees to the office of Secretary of State. Under the construction contended for by appellee, which, if either, of the two first appointed would have been entitled to the office, had the last nominee resigned prior to his confirmation by the Senate? We think it too clear for further argument that the only proposition placed by the Governor before the Senate by his message of January 17th was the confirmation of appointments made during the recess of the Senate, and that such only was his intention. Any other construction, as said in Kroh v. Smoot, 62 Md. 172, "leads to a result that could never have been contemplated by the framers of the Constitution, and certainly never intended by the Governor in making the appointment simply to fill the vacancy." It follows, from what we have said, that Mr. Tittle was not appointed to the constitutional office at the time the amendment went into effect, nor at any time during the regular session of the Legislature. It appears that at the special session, in July following, his name was presented to the Senate for confirmation, but, before any action was taken thereon by that body, it was withdrawn. Later his name was again sent by the Governor to the Senate, and its advice and consent to Mr. Tittle's appointment was asked, but the appointment was rejected by that body. The Governor not having previously appointed Mr. Tittle to the constitutional office, and the statutory office having been abolished on January 20, 1913, and no other name having been sent to the Senate before its adjournment, there was a vacancy in the office which authorized the Governor to make the appointment of Mr. Stamps, and his commission, which issued after his qualification, gave him prima facie title to the office.

[3] But does the fact that, from the time the constitutional office was created up to the time of the bringing of this suit, Mr. Tittle was in possession of the office and discharging its duties, although not having title or color of title to the office other than bare possession, entitle him to the equitable remedy of injunction to prevent Mr. Stamps from taking possession under his clear title thereto, pending the settlement of the question of title in a suit to be brought for that purpose? We have already shown that Mr. Tittle had neither title nor color of title to the office, and that Mr. Stamps was not only such officer de jure but that he held written evidence of such title, viz., a commission under the great seal of state. In Ewing v. Turner, 2 Okl. 94, 35 Pac. 951, it is held that where a person shows a certificate of election to an office, regular upon its face, or any lawful evidence of title later and superior to any other claimant, and that he has qualified as required by law, such would be deemed a prima facie title, and would entitle the one holding the same to the official belongings of such office. In this connection we quote the following from Cameron v. Parker, 2 Okl. 295, 38 Pac. 20:

"In an elective office the law requires that the evidence or credentials of the persons declared duly elected shall be a certificate of election, or in an appointive one, as in the case at bar, a commission from the Governor. This is the highest evidence of title the law requires, and it is not for an individual to assert the invalidity of the law authorizing it, the want of authority for its issuance, or the illegal exercise of the power conferring it. These are questions for the courts to determine, but in the meantime the person holding the commission or the certificate of election, regular upon its face, evidencing an absolute or prima facie title to the office, is entitled to the possession of the books, records, and official belongings thereto, notwithstanding the actual title may be in controversy at the time in the same or another tribunal. If this were not so, every elective or appointive office might be made the subject of

a trial of title before the last person appointed or elected thereto could gain possession of it. The law would, in addition to its commission or certificate, require the person holding the same to go into court and show a better title, if possible, at the end of a suit in quo warranto, or a contest in a tribunal constituted by law for the trial and determination of such cases. This would manifestly place it within the power of a person whose term of office had expired to defy the constituted authorities of a state or nation by an assumption or claim of title to an office, when neither legally nor morally could he possibly have any right thereto; and, when final judgment of a court was rendered against him, the party entitled to the office in virtue thereof would be, if refused, compelled to resort to mandamus to obtain possession thereof. A year or two years might elapse before a trial of the actual title could take place, and the person holding the only evidence of title required by law for its possession would be powerless to exercise and enjoy the office to which he had been elected by the suffrages of his fellow citizens, or appointed by a lawfully constituted executive authority. Such a law could only be regarded as a menace to good government, resulting in a siege of litigation, and abhorrent to all self-respecting aspirants to public office, and to the finer sensibilities of the substantial citizenship of our country. An individual has no more right to judge of a bad law than of a good one. One has no right to defy either a good law or a bad one, or no privilege to question or deny the authority of an officer to exercise an official function, unless he do so in the manner prescribed by law. Revolt cannot be permitted against lawful authority when a successor has been named for an office to which title in another has ceased, either by removal or by limitation of law, when possession is demanded in virtue of a title later and superior. Such person must surrender the office, and, if aggrieved, seek relief or restoration in the proper tribunals of the country. We might conclude this point by saying that the proposition that mandamus will lie to compel delivery of records, muniments, and official belongings of the public office to a successor holding a prima facie or absolute title, emanating from the authority constituted by law to convey it, after demand, has never been denied by any reputable authority in the history of English or American jurisprudence. We assert that in such a case the title to the office is not in controversy, nor can it be put in issue."

In State v. Johnson, 30 Fla. 493, 11 South. 854, 18 L. R. A. 410, the Supreme Court of Florida quotes the following with approval:

"The commission of the Governor, whether granted on the certificate of election, or a certificate of vacancy, is the highest and best evidence of who is the officer, until on a quo warranto, or a proceeding in the nature of quo warranto, it is annulled by a judicial determination. It is this commission which imparts to the court judicial notice and which informs the community who are clothed with official authority, and bound to official duty. In a proceeding, whether by mandamus or under the statute, to compel the transfer of property attached to a public office, this commission is a clear prima facie title to the office, on which the courts will proceed without indulging any inquiries behind it, when it is founded on a certificate of election or a certificate disclosing vacancy made by proper authorities. Inquiries behind it would generate a controversy as to a title to the office, which, as we have already said, cannot be entertained either on an application for a mandamus or in the statutory proceeding. The court must rest on the prima facie title, and award the keeping of the property of the office to this title, for the time being, without adjudicating whether the relator has or has not the actual title."

The following is taken from the syllabus in the reported case of La Pointe v. O'Malley, 46 Wis. 35, 50 N. W. 521:

"When the result of a canvass of votes cast at a legal election, as declared by the proper canvassing officers, shows the election of a certain person to an office, and he qualifies within the time and in the manner prescribed by law, he is entitled to the office as against every other person laying claim thereto, until the result so declared is set aside by the judgment of some competent court in a direct proceeding for that purpose; and every other person who assumes to exercise the duties of such office (as by holding over after the expiration of a former term) must be treated as a mere intruder or usurper, in any proceeding against him to compel him to deliver up the books and papers pertaining thereto, or to recover moneys or other property in his hands which he is required by law to deliver over to his successor in office. It makes no difference in the application of the foregoing rule that the predecessor in office was himself a candidate for re-election, and on the ground of some alleged error or fraud in the vote or the canvass, or the declaration of the result, claims that he, and not his opponent, was duly elected. Such claimant, not having, by mandamus (as might be done in a proper case), compelled the canvassers to give him the certificate of election, cannot retain the office as against an opposing claimant of the character above described, who demands the same, and put the latter to an action of quo warranto, but must himself proceed with such action."

In State v. Johnson, 30 Fla. 493, 11 South. 854, 18 L. R. A. 410, the Supreme Court of Florida holds that, when a certificate of election has been issued to another who has qualified thereunder, it is the duty of the incumbent of a public office, at the expiration of his term, to surrender the office to his successor, and, should he then desire to contest the eligibility, qualification, or election of the person so holding the certificate, he may do so by the law for contesting claims to office.

The Supreme Court of New Mexico, in Conklin v. Cunningham, 7 N. M. 460, 38 Pac. 174, held:

"An appointment to office by the executive is complete upon the delivery of the commission. Marbury v. Madison, 1 Cranch, 137 [2 L. Ed. 60]; Wetherbee v. Casneau, 20 Cal. 503. We think that, when the Governor appointed and commissioned the plaintiff, he gave him prima facie title to the office. People v. Head, 25 Ill. 325. The commission of the Governor, when issued, must be taken at least as prima facie evidence that the person holding it is lawfully entitled to the office."

In view of the law as we understand it, and as it seems to be from the decisions above referred to, the remedy by injunction was not, under the facts of this case, available to Mr. Tittle to prevent Mr. Stamps from taking possession of the office, its books, papers, and belongings, and from discharging the duties thereof. If not satisfied with the evidence of title held by Mr. Stamps, he should have nevertheless, in the circumstances, surrendered the office to him, and then, if he so wished, should have brought his suit to establish his supposed better claim.

[4] Appellee's counsel contend with great earnestness and ability that the Governor had no legal authority to appoint Mr. Stamps at the time he did, and that therefore Mr. Stamps has neither title nor color of title to the office of prison commissioner. Their argument in effect is that the power of the Governor to fill the office by his own action is not general; that his power, acting alone, is confined solely to filling vacancies occurring during the recess of the Senate; that as the vacancy occurred on January 20, 1913, when the constitutional amendment went into effect, during the session of the Legislature, the Governor had no power to remain inactive during the entire session, allowing the office to be vacant, allowing the special session to go by, without making a nomination, and then undertake to fill the office by his own single act after both the general and special sessions of the Legislature had adjourned; that therefore the very contingency creating the power of the Governor to fill the office by his own action did not arise.

It is undisputed that the Governor did not nominate to the Senate any person for the constitutional office of prison commissioner during the regular session of the Legislature, unless the nomination of Messrs. Tittle and Brahan, as recess appointees, had that effect, and we have held that it did not. We do not think the power of the Governor is limited in the manner or to the extent claimed by counsel, for, while the Constitution provides that appointments made by the Governor during the session of the Legislature shall be with the advice and consent of two-thirds of the Senate present, it further provides that, should there be no confirmation during the session, the Governor may appoint some other person to fill the vacancy until the next regular session of the Senate. We think the provision of the Constitution with regard to the power of the Governor applies equally to filling vacancies occurring during the session as well as recess. But counsel are mistaken in saying that the Governor allowed a special session to go by without making a nomination to the Senate, for the record indisputably shows that at the special session Mr. Tittle was so nominated and was by the Senate rejected, and that it was not until after this that the appointment of Mr. Stamps was made.

As to the pleas in abatement and of venue presented by Mr. Stamps in the court below, we think it is sufficient to say that, upon the showing made on the motion of Mr. Stamps to have the trial judge correct the recital in the judgment that the appellant, as well as the other parties hereto, in presenting their motion to modify the injunction, submitted themselves to the jurisdiction of the court, we are not inclined to disturb the findings of the trial judge.

We think that the judgment should be reversed, and the order granting the temporary injunction vacated; and it has been so ordered.