

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 20, 1990

Honorable Ted B. Lyon
Chairman
Subcommittee on Elections
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-1161 (Corrected)

Re:    Status of an individual
who is  appointed  and  sworn
in as a district judge during
a  legislative   recess   but
whose name  is not  submitted
to the  senate for  confirma-
tion, and  related  questions
(RQ-1898)

Dear Senator Lyon:

You ask about the status  of a person appointed by  the
governor to a new district judgeship in Dallas during a time
when the legislature was not  in session and whose name   was
not submitted to  the senate for  confirmation when, at  the
call of the  governor, that body  later convened in  special
session.  Specifically,  you   ask:  (1) whether  the  person
ever officially became a district judge, and if so, at  what
point did he no longer occupy that station; (2) whether  his
rulings as a judge were valid;  and (3) whether he would  be
entitled to vacation time for such service, to remain on the
state payroll until it  became exhausted, and thereafter  to
serve as a visiting district judge.

We are  advised that  Governor Clements  appointed  the
individual involved as judge of the 363rd Judicial  District
Court of  Dallas County  on  August 29,  1989, and  that  on
September 1,  1989, he  subsequently qualified  and  assumed
office.  The Texas  Legislature was not  in session at  that
time, but pursuant to the call of the governor dated  August
23rd, 1989,  it convened  in  special session  November  14,
1989.  The  special session  ended December  12, 1989,  when
both houses  adjourned <u>sine die</u>.  On  December  13,  1989,
Governor Clements appointed another  person to be the  judge
of the 363rd Judicial District Court of Dallas County,  with
a notation that the person initially appointed had resigned.
On December 14, 1989, the second appointee qualified for the
office by  officially  filing an  oath  of office  with  the
secretary of state.

In fact, we are advised, the first appointee made an oral request to the governor November 23, 1989, that he be permitted to resign and that his name not be submitted to the senate for confirmation, but the request was not put in writing nor was the governor's acceptance of the resignation put in writing. As noted, however, no name was submitted to the senate, and the day following the adjournment of the special session, a successor was appointed to the office.

The 363rd Judicial District (Dallas County) was created by the legislature in 1989 to be effective September 1, 1989. Acts 1989, 71st Leg., ch. 632, at 2104.[1] Although creation of the court was delayed until September 1, 1989 (section 1 of the legislative act so specified), the portion of the act creating the court on that date became effective August 28, 1989, ninety days after the date the legislature adjourned. See Tex. Const. art. III, § 39. Thus, the law creating the 363rd District Court of Dallas County as of September 1, 1989, was in effect on August 29, 1989, the date the governor made his first appointment to fill the office. Section 201.027 of the Election Code states that if a new office is created, a vacancy occurs on the effective date of the statute creating the office or on the date when the order creating the office is adopted.

The general power of the governor to fill vacancies in public offices is found in article IV, section 12, of the constitution; the specific power to fill judicial vacancies is located in article V, section 28, thereof. They are to be read together. White v. Sturns, 651 S.W.2d 372 (Tex. App. - Austin 1983, writ ref'd n.r.e).

The latter provision declares that vacancies in the office of judges of "the supreme court, the court of criminal appeals and the district courts" shall be filled by the governor "until the next succeeding general election." Section 12 of article IV reads:

> (a) All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law by appointment of the Governor, which appointment, if made during its session,

---

1. The act is codified as section 24.508 of the Government Code.

shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the Senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during the session of the Senate, the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate; but may appoint some other person to fill the vacancy until the next session of the Senate or until the regular election to said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the next general election.

(b) The Legislature by general law may limit the term to be served by a person appointed by the Governor to fill a vacancy in a state or district office to a period that ends before the vacant term otherwise expires or, for an elective office, before the next election at which the vacancy is to be filled, if the appointment is made on or after November 1 preceding the general election for the succeeding term of the office of Governor and the Governor is not elected at that election to the succeeding term. For purposes of this subsection, the expiration of a term of office or the creation of a new office constitutes a vacancy.[2]

Although the power of the governor to appoint high judicial officers pursuant to article V, section 28, is not by that section expressly made subject to confirmation by

---

2. Subsection (b) of section 12 was added to the constitution in 1987. See V.T.C.S. art. 19a (implementing statute).

the senate, confirmation pursuant to article IV, section 12, is required nevertheless. White, supra. When the legislature is not in session, the governor's judicial appointees may qualify, take office, and perform the duties of the office as interim appointees, subject to later confirmation by the senate. Ex parte Sanders 215 S.W.2d 325 (Tex. 1948); see Walker v. Baker, 196 S.W.2d 324 (Tex. 1946); Stamps v. Tittle, 167 S.W. 776 (Tex. Civ. App. - Galveston 1914, no writ); Brumby v. Boyd, 66 S.W. 874 (Tex. Civ. App. 1902, no writ).

Inasmuch as the legislature in this case did not convene until after the governor made his first appointment, it follows that upon qualifying, the first appointee officially became the judge of the 363rd District Court of Dallas County. The question of when the first appointee ceased to be the judge of that court presents a more difficult matter.

The most obvious conclusion about the matter at hand is that the attempted oral resignation of the first appointee was ineffective because subsection (a) of section 201.001 of the Election Code reads:

> To be effective, a public officer's resignation or an officer-elect's declination must be in writing and signed by the officer or officer-elect and delivered to the appropriate authority for acting on the resignation or declination. The authority may not refuse to accept a resignation.

The governor may not arbitrarily remove an appointee from an office to which he was appointed during a recess by later during the recess summarily appointing another to succeed the first appointee. Article XV, section 9, of the constitution, adopted in 1980, reads:

> (a) In addition to the other procedures provided by law for removal of public officers, the governor who appoints an officer may remove the officer with the advice and consent of two-thirds of the members of the senate present.

> (b) If the legislature is not in session when the governor desires to remove an officer, the governor shall call a special session of the senate for consideration of

> the proposed removal. The session may not
> exceed two days in duration.

The provision means, in our opinion, that a person appointed to office by the governor when the legislature is not in session cannot be removed from office by the governor except with the concurrence of the necessary senatorial vote. Cf. Dorenfield v. State, 73 S.W.2d 83 (Tex. 1934). Inasmuch as no senate action was then possible, the governor's original appointee could not have lost his office by action of the governor before the legislature convened November 14, 1989.

In our opinion, the failure of the governor to submit to the senate the name of a nominee during the special session that began November 14, 1989, neither effected the removal of the nominee from office instanter nor defeated the constitutional requirement that his recess appointee, in order to continue in office, meet approval during the session of two-thirds of the senate present. Tex. Const. art. IV, § 12; id. art. XV, § 9.

Section 12(a) of article IV provides that if the governor makes an appointment to fill a vacancy during a recess of the senate,

> the said appointee, or some other person to
> fill such vacancy, shall be nominated to the
> Senate during the first ten days of its
> session.  (Emphasis added.)

The constitutional provision does not leave room for other alternatives. Cf. Walker, supra. In default of the governor nominating "some other person" to fill the vacancy within the first ten days of the session, the "said appointee," in our opinion, is ipso facto nominated to the senate.

In our opinion, when the governor failed to submit the name of another person to fill the vacancy on the 363rd Judicial District Court within the first ten days of the called legislative session that began November 14, 1989, the name of his original nominee to that post was at that juncture before the senate for confirmation or rejection. Section 9 of article XV prevented the governor's failure to submit the appointee's name to the senate from operating as a removal from office.

Because the attempted oral resignation of the original appointee was not effective under Election Code section 201.001(a), and the governor did not attempt to remove him from office with the advice and consent of the senate pursuant to article XV, section 9, of the constitution, there was no vacancy to be filled when the governor purported to appoint another person judge of the 363rd Judicial District Court on December 13, 1989, unless the absence of senate confirmation of the original appointee during its session worked a rejection of the appointment. The original appointee would continue to be the de jure judge of the court.

Article IV, section 12, was construed by the Austin Court of Civil Appeals in Denison v. State, 61 S.W.2d 1017 (Tex. Civ. App. - Austin), writ ref'd per curiam, 61 S.W.2d 1022 (Tex. 1933). There, the court said:

> [T]he clear import, language, and requirement of the Constitution is that any and every appointment by the Governor to fill a vacancy in a state or district office must be with the advice and consent of two-thirds of the Senate as in said section 12 provided.

Id. at 1021. The Denison case tested the authority of the governor to commission an appointee whom the senate had failed to confirm by a two-thirds vote. In its per curiam opinion refusing the writ, the supreme court said:

> The only way the senate could confirm [Denison] was for 'two-thirds of the Senate present' to advise and consent thereto. When the Senate Journal declared he was 'Not confirmed,' it could only mean that two-thirds of the Senate had not advised and consented to his appointment. (Emphasis in original.)

61 S.W.2d at 1023.

If the constitution requires that "any and every" appointment by the governor to fill a vacancy "must be with the advice and consent of two-thirds of the senate" as provided in section 12, and if the "only way" the original appointment could be confirmed was "for 'two-thirds of the senate present' to advise and consent thereto," then the failure of the senate to act on his appointment means that the appointee was "not confirmed." A failure to confirm by

the required vote (for whatever reason) works a rejection of the appointment, in our opinion, whether the nominee is "some other person to fill the vacancy" or "the said appointee."[3]

Nor do we think that once so rejected the appointee continued to hold office under the "holdover" provision, article XVI, section 17. Article XVI, section 17, provides:

> All officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified.

In Attorney General Opinion O-3343 (1941), Attorney General Gerald Mann was asked about the status of a person reappointed by the governor during a senatorial recess to succeed himself as state auditor. The reappointment was later rejected by the senate, and the rejected nominee asked if he continued to hold the office "de facto" until another official was appointed and qualified. The opinion advised:

> To hold that such an officer would hold over -- even after he has been rejected -- until a successor should be nominated, confirmed and has qualified, would be to open the way to a complete disregard of Section 12 of Article 4, State Constitution. For, if such an officer is not definitely 'out' upon rejection, no end logically can be found for his service, if by chance the Senate should adjourn without the appointment, confirmation and qualification of a successor. Under that

---

3. In the interpretive commentary following the text of article IV, section 12, Professor A. J. Thomas says the limitation on the governor's power of appointment by which his power is made subject to the approval of two-thirds of the senate is copied from the federal constitution. Tex. Const. art. IV, § 12, interp. commentary (Vernon 1984). Under the federal Constitution, recess appointments, unless confirmed, expire at the end of the next congressional term. United States v. Woodley, 751 F.2d 1008 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986); see 1 Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis, at 330 (1977)(article IV, section 12, "appears to consider failure to confirm as a rejection").

interpretation, if at some future time a Governor should desire to do so, he could maintain his appointee in office year after year, notwithstanding rejection by the Senate, by simply failing to nominate or appoint someone else.

Attorney General Mann decided that the specific provisions of article IV, section 12, controlled the general "holdover" provisions of article XVI, section 17, because otherwise a part of article IV, section 12, would be nullified. Similarly, it was decided in State v. Valentine, 198 S.W. 1006 (Tex. Civ. App. - Fort Worth 1917, writ ref'd), that article XVI, section 17, had no application where it conflicted with another, more particular, provision of the constitution.[4] See also Attorney General Opinion JM-423 (1986). The court in Denison, supra, said:

The language [of article IV, section 12], 'If rejected, said office shall immediately become vacant, and the governor shall, without delay, make further nominations, until a confirmation takes place,' clearly and by necessary implication denies to a nominee, whose confirmation has been rejected by the Senate, any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof.

61 S.W.2d at 1021.

We are therefore of the opinion that when the senate adjourned sine die on December 12, 1989, without confirming the recess appointment of the governor's original appointee to the bench of the 363rd Judicial District Court (and no other person having been nominated by the governor and confirmed by the senate to fill the vacancy), the appointment of the original appointee stood rejected by the senate.

---

4. In Attorney General Opinion M-151 (1967) it was held that article XVI, section 17, did not operate to extend the tenure of a judge whose office the constitution declared vacant upon his attaining 75 years of age and ten years service. The Texas Supreme Court considered the same matter in Werlein v. Calvert, 460 S.W.2d 398 (Tex. 1970) and took the same position without discussion.

Under those circumstances, notwithstanding article XVI, section 17, the office became immediately vacant -- actually and not merely constructively -- and the original appointee thereupon ceased to be the judge of the 363rd Judicial District Court.

With the matter in that posture, the governor, following the adjournment of the senate, was free during the recess to appoint another person to fill the vacancy created by the senate's failure to confirm the original appointee, which he did on December 13, 1989. See Stamps, supra. The new appointee qualified the following day and immediately became the judge of the 363rd Judicial District Court, subject to later confirmation by the senate or the intervention of an election. Until the senate adjourned without having confirmed his appointment, however, the original appointee of the governor was the de jure judge of the 363rd Judicial District Court and his rulings as judge of that court were the acts of the valid judge of the court. See Ex parte Sanders, supra; Keen v. Featherston, 69 S.W. 983 (Tex. Civ. App. 1902, writ ref'd).

Some past opinions of this office took a different position. One of the most recent was Attorney General Opinion H-948 (1977), which was issued prior to the 1980 addition of article XV, section 9, to the constitution, and prior to the 1983 White v. Sturns decision. It relied entirely upon four earlier opinions of this office: Attorney General Opinions M-267 (1968); V-868 (1949); O-4920 (1942); and Op. Tex. Att'y Gen. No. 1809 (To Hon. W. D. Suiter, Aug. 18, 1917), 1916-1918 Tex. Att'y Gen. Biennial Rep. 424. It neglected to cite or discuss prior opinions of this office taking an adverse position to those upon which it relied.[5] Attorney General Opinion H-948 concluded:

> Accordingly, it is our opinion that the Senate's failure to confirm or reject an appointment will prevent the appointment from becoming effective and vesting the appointee

_____

5. Among the pertinent opinions Attorney General Opinion H-948 ignored were: Attorney General Opinions M-151 (1967); C-57 (1963); WW-530 (1958); WW-305, WW-190 (1957); O-3343 (1941) (discussed above); O-1092A, O-1092 (1939); Op. Tex. Att'y Gen. No. 2910 (To Hon. W. M. Martin, Jan. 21, 1933), 1932-1934 Tex. Att'y Gen. Biennial Rep. 391.

with any right to exercise the duties of office, if the Governor made the appointment while the Senate was in session and if the individual was not appointed to succeed himself in office. If the Senate fails to act on a recess appointment or on an appointment made during the session of an individual to succeed himself in office, the individual can continue to exercise the duties of office pursuant to the requirements of article 16, section 17, of the Texas Constitution, until the Senate subsequently rejects the nomination or until the Governor appoints another individual.

It is obvious that the view Attorney General Opinion H-948 espoused would permit the governor, at his pleasure, to maintain a non-elective, recess appointee in office indefinitely (and an elective appointee until the next election) by the stratagem of not referring the appointment to the senate or, if the nomination were submitted and rejected, by simply refusing to nominate anyone else.

Attorney General Opinion H-948 relied upon Attorney General Opinion M-267, which had itself relied upon Attorney General Opinion V-868. Attorney General Opinion V-868 reached an erroneous conclusion because it supposed that "a hiatus" in office would result if unconfirmed recess appointees did not continue in office as holdovers pursuant to article XVI, section 17 -- overlooking the article IV, section 12, power and duty of the governor to fill vacancies in case there is no confirmation during a session. The lapse influenced the drafter of that opinion to follow a 1917 attorney general opinion (Opinion 1809) rather than the later Denison decision and Attorney General Opinion O-3343.

Attorney General Opinion H-948, however, most heavily relied upon Attorney General Opinion O-4920. The 1942 opinion dealt with a statute stating that "The State Board of Water Engineers shall designate, subject to approval by the Governor, the first Board of Directors . . . ." (Emphasis added.) Although the statute called for someone other than the governor to make the appointments and did not call for senate confirmation, the 1942 opinion concluded that such confirmation was nevertheless constitutionally necessary (though a failure to confirm, it said, did not result in removal). It apparently read article IV, section 12, to require senate confirmation of persons appointed by

executive officers <u>other</u> than the governor.[6]   At the time Attorney General Opinion H-948 was issued, such a construction of article IV, section 12, had been repudiated in Attorney General Opinion WW-324 (1957) on article II, section 1, grounds (separation of powers).   <u>See also</u> Attorney General Opinion JM-58 (1983).

Attorney General Opinion MW-303 (1981) should also be mentioned.  It, too, followed Attorney General Opinions M-267 and V-868 without critical examination.

We have found Attorney General Opinions MW-303 (1981), H-948 (1977), M-267 (1968), V-868 (1949), O-4920 (1942), and Opinion No. 1809 (1917) to be unreliable guides in the construction of article IV, section 12, of the Texas Constitution.  Either their rationales have been undermined by later court cases and constitutional developments, or their analyses were faulty from the beginning.  They are overruled.

A fundamental principle associated with our republican form of government is that every public officeholder remains in his position at the sufferance and for the benefit of the public, subject to removal from office by edict of the ballot box at the time of the next election, or before that time by any other constitutionally permissible means. <u>Tarrant County v. Ashmore</u>, 635 S.W.2d 417 (Tex.), <u>cert. denied</u>, 459 U.S. 1038 (1982).  In our opinion, the original appointee of the governor who qualified and took office during the recess of the senate was the <u>de jure</u> judge of the 363rd Judicial District Court until the senate later adjourned without confirming his appointment by the governor.  Following such adjournment, the office was vacant actually and not merely constructively until the governor appointed another person to fill the vacancy during the recess -- subject to later senate confirmation or the intervention of an election.

---

6.  Attorney General Opinion O-4920 did not regard the appointments as those of the <u>governor</u>, or the required gubernatorial approval as a requirement for "confirmation." Had it done so, its conclusion that <u>senatorial</u> confirmation was required would have been correct.  <u>See</u> <u>Bernhardt v. City of El Paso</u>, 233 S.W.2d 357 (Tex. Civ. App. - El Paso 1950, no writ).

We have not been provided sufficient facts to answer your questions regarding the original appointee's vacation time or his service as a visiting judge except to say that in no case could he be considered any longer the judge of the 363rd Judicial District Court following the adjournment of the senate. But, otherwise, he would be, in our opinion, entitled to the same rights and privileges, and subject to the same duties and responsibilities, of any other district judge of similar tenure.

## S U M M A R Y

A recess appointee of the governor to a district judgeship, who subsequently qualified, became the _de jure_ judge of the court. The office became vacant, actually and not merely constructively, when the senate adjourned its next session _sine die_ without having confirmed the appointee, even though neither the appointee's name, nor that of another to fill the vacancy, was submitted to the senate. Following adjournment, the governor was free to appoint another to hold the office during the recess, subject to later senate confirmation. Prior attorney general opinions in conflict with this opinion are overruled.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood and
William Walker