JOHN McALLEN v. T. M. RHODES.

(Case No. 2087)

1. SUIT FOR OFFICE—JURISDICTION OF DISTRICT COURT—PROCEEDING BY QUO WARRANTO. The district court has jurisdiction of a suit for the recovery of an office, if its value is over $500, and an information in the nature of a *quo warranto*, filed by the proper officer at the instance of a private relator, as prescribed by the act of July 21, 1879, is an appropriate proceeding, and may be used, not only to oust the intruder, but also to adjudge to the relator the possession of the office. (Citing State *v.* Owens, 63 Tex. 261, and Williamson *v.* Lane, 52 Tex. 335.)

2. SAME—REMEDY BY QUO WARRANTO CUMULATIVE—RIGHT MAY BE DETERMINED IN AN ORDINARY CIVIL ACTION—STATE NOT A NECESSARY PARTY—The remedy by *quo warranto* is, however, not the only method that may be pursued for the recovery of an office, nor does the act of July 21, 1879, contemplate that it should be; but the right to an office may be determined in an ordinary civil suit brought directly by the claimant against the party in possession, without resort to an information in the nature of a *quo warranto*, and the state is not a necessary party to such suit.

3. SAME—INJUNCTION—In a suit between private parties for the recovery of an office, the claimant is not entitled to an injunction restraining the usurper from discharging the duties of the office or enjoying its emoluments, during the pendency of the suit.

APPEAL from Hidalgo. Tried below before the Hon. John C. Russell.

This suit was instituted, by petition as in ordinary suits, in the district court of Hidalgo county, January 13, 1885, by the appellant, John McAllen, against the appellee, T. M. Rhodes, for the office of county judge of Hidalgo county.

After exceptions to his original petition had been sustained, the plaintiff, in his first amended petition, filed May 11, 1885, alleged, that he had been duly and legally elected to the office of county judge of Hidalgo county, at the general election held in that county November 4, 1884, and that the office was of the net annual value of $2,000; that, thereafter, the commissioners' court convened and made a partial and erroneous estimate of the number of votes cast at the election, and declared the result to be that appellant had received only two hundred and eighty-two votes, and that appellee had received three hundred and sixteen votes; and that under that estimate appellee had pretended to qualify as county judge of Hidalgo county, and was still unlawfully occupying the office and enjoying its fruits and revenues.

That at the time of making the false, fraudulent and pretended canvass, above set forth, the commissioners' court was composed of ignorant and unscrupulous men, only one of whom could read, write, or speak the English language, and all were determined partisans of the defendant, and bitter foes of the plaintiff, under the influence of the defendant, and were candidates for re-election in the same election with him; that a conspiracy was entered into by the commissioners and appellee to corruptly "count out" the appellant and declare the defendant elected; that, in pursuance of this conspiracy, the commissioners' court corruptly threw out and refused to count the election returns from precinct No. 2, where the appellant had received one hundred legal votes and the appellee had received two, apparently legal, votes, although the returns were, in all respects, legal; that plaintiff was present in person and by attorney at the pretended canvass, demanded his certificate of election, offered to take the oath of office and give the necessary bond, and to do all acts necessary to his qualification as county judge of Hidalgo county, but all his attempts and endeavors were at once refused by the court.

That at the time of the canvass, the town of Hidalgo, where the same was being conducted, was filled with armed partisans of defendant, and the court house, itself, was so filled and guarded; that all officers permitted by law to administer the oath of office, were bitter partisans of defendant, and would, none of them, administer the oath of office to the plaintiff, and, as he could find no one who would administer to him the oath of office, although he endeavored so to do,

he was obliged to content himself with his attempts to assert his rights; that he had been prevented from qualifying as county judge by the threats, armed force and resistance of the defendant and his partisans; and that, at the time of the canvass, he prepared and filed with the clerk of the commissioners' court a written protest against its illegal action in declaring the defendant elected.

That now, here in open court, he tenders his bond and official oath before entering upon the discharge of his official duties as county judge; that if the commissioners' court had, as it ought to have done, included, in its estimate of the result of the election, the returns from election precinct No. 2, which were in all respects legal and proper, and in which precinct the election was properly and legally held, the true result of the election, from the face of the returns alone, would have showed that plaintiff had received three hundred and eighty-two votes and the defendant three hundred and eighteen votes.

That the returns from precint No. 1 were false, in that, at the polls in that precint, fifty illegal votes were falsely and fraudulently cast for defendant and counted in his favor in the estimate by the court; and these returns were further illegal and ought to have been rejected, for the reason that at the polls twelve other persons—naming them—voted illegally for defendant, and their votes were illegal in that they, each and all, were residents of election precinct No. 6; and that ten illegal votes—naming the parties—had been cast and counted for the defendant in election precinct No. 3.

The petition concludes with a prayer for the office of county judge of Hidalgo county, and for the fees and emoluments thereof; for injunction, and for general and special relief, etc.

In his first amended answer filed May 12, the defendant pleaded to the jurisdiction, and demurred generally and specially to the sufficiency of plaintiff's petition. The plea to the jurisdiction was overruled, but the court sustained the defendant's demurrer, the grounds of which were, amongst others, that the suit had not been brought in the name of the state of Texas by information in the nature of a *quo warranto*, as required by the act of the legislature, approved 1879, prescribing the remedy and regulating the proceedings by *quo warranto*, and that the plaintiff had not alleged that he had executed the bond and taken the oath of office within the time required by law. The plaintiff declining further to amend, the court dismissed the cause; and from that judgment the plaintiff has prosecuted his appeal to this court.

*Rentfro & Scott*, for appellant, cited: The State ex rel. R. C. Jennett

*v.* W. P. Owens, 63 Tex. 261; *Ex parte* Whitlow, 59 Tex. 273; Williamson *v.* Lane, 52 Tex. 335; *Ex parte* Towles, 48 Tex. 435; citing Eng. and Am. authorities; Wright *v.* Fawcett, 42 Tex. 206; Banton *v.* Wilson, 4 Tex. 400; Chowning *v.* Boyer, Tex. Law Rev. vol. 5, No. 40, p. 623; R. S., 991, 4518: Gen. Laws of 1883, p. 50.

*Ballinger, Mott & Terry,* also for appellant, that the remedy provided by statute is merely cumulative, cited: Acts of 1879, extra session, ch. 48, sec. 6; R. S. app., p. 46.

*W. H. Mason,* for appellee, that the statutory remedy must be pursued, cited: Proceedings *quo warranto,* R. S. app., p. 45; State, ex rel. Jennett *v.* Owens, 63 Tex, 270, 271; State *v.* Cooke, 54 Tex. 482; Watts *v.* State, 61 Tex. 184; Wright *v.* Allen, 2 Tex. 158; Bradley *v.* McCrabb, Dallam, 504; High on Ex. Leg. Rem. sec. 623, et seq; Lindsey *v.* Attorney General, 33 Wis. 508.

That the State was a necessary party, he cited; R. S. app., p. 45; Lindsey *v.* Luckett, 20 Tex. 520; People *v.* Hooker, 28 Cal. 123.

WILLIE, CHIEF JUSTICE.—The principal question raised by the record in this cause is: Can an office be recovered from a usurper by the party entitled to it in an ordinary suit and without proceeding by an information in the nature of a *quo warranto,* as prescribed by act of July 2, 1879. It has been heretofore settled by this court that the district court has jurisdiction of a suit for the recovery of an office, if its value is over five hundred dollars. State *v.* Owens, 63 Tex. 261; Williamson *v.* Lane, 52 Tex. 335.

It has also been held that an information in the nature of a *quo warranto,* filed by the proper officer, at the instance of a private relator, as prescribed in the above act, is an appropriate proceeding, and may be used, not only to oust the intruder, but to adjudge to the relator the possession of the office. State *v.* Owens, *supra.*

But it has not been held that this is the only remedy that may be pursued, nor does the statute contemplate that it should be. The sixth section declares, that the remedy and mode of procedure therein prescribed shall be cumulative of any then existing. If, therefore, there was, previous to the passage of the act, any method of recovering an office withheld from the true owner by an intruder, that method may be still pursued, notwithstanding the act provides the remedy by *quo warranto.*

We find several cases in our reports in which this court has held, that the writ of mandamus might be used to accomplish the purposes

above stated. Bradley v. McCrabb, Dallam, 504; Banton v. Wilson, 4 Tex. 400; Lindsey v. Luckett, 20 Tex. 516.

We find also that, in other cases, an ordinary suit, brought by the party entitled to an office, against the person who has deprived him of it, has been treated by this court as an appropriate proceeding. Boyton v. Griffin, 4 Tex. 566; Keenan v. Perry, 24 Tex. 253.

It is true that the state is interested in having its offices filled by persons duly appointed or elected thereto, but the candidate chosen has also a direct pecuniary interest in obtaining the office with its franchises and emoluments, and this interest must be respected equally with the other. Indeed, the relator in a *quo warranto* proceeding is the real plaintiff, and the position of the state is that of a nominal party. Practically, the state's attorneys take no part in the proceeding, and the plaintiff's side of the case is represented by the relator's counsel alone. In sustaining his suit, the relator accomplishes all that the state has any interest in having done, viz., ousting an intruder, and filling the office with the person properly entitled to it. Should the relator fail, the respondent is shown to be the legal incumbent, and the wish of the state is in that event fulfilled.

In fact, the state, in these contests between private parties over the title to an office, is, in reality, more like an impartial observer than a partisan of either claimant. Still, as the statute prescribes that the information in the nature of a *quo warranto* must be sued out at the instance of its attorney, when resort is had to that method of procedure, the statute should be followed, and the state be made party plaintiff. But the important interest in the office is that which is held by the person who has been legally chosen to it. It is his property; its franchises, perquisites, salary and emoluments are his, of right, and he is entitled to the process of law to obtain them. Neither the state nor its attorneys can deprive him of them by a refusal to allow him to sue for their recovery. This would be to place it within the power of these officers to defeat the will of the people, and keep in office persons not entitled thereto under the constitution and laws of the state.

The information can be filed, only upon petition of the attorney-general, or state or county attorney. If each of these officers refuse to move in the matter, there is no authority given the courts to compel them to proceed. In such case the party entitled to the office is powerless, and the owner of property has no remedy to recover it, and must stand by and see it enjoyed by another, because the state's attorneys are not willing to join him in its recovery. We do not think that the laws of our state intend to permit any such injustice.

If the right to sue for the office had been given, together with the remedy by *quo warranto*, there might possibly be some reason for holding that this was the only remedy which could be used. Had there been no provision, saving the remedies already in use, there might also be some ground for such a construction. But when former remedies are expressly preserved, it is equivalent to an express declaration by the legislature that the injured party might resort to them, if he so chose, instead of an information in the nature of a *quo warranto*.

That the state is not a necessary party to a proceeding to recover an office for a private individual, in the view of our courts, is plain, from the fact that the remedies in use for that purpose, previous to the passage of the above act, were such as did not require the presence of the state to enforce them. Even to a mandamus suit, as conducted in Texas, the state need not be a party, though, in some states, the cause is docketed in its name as plaintiff. Even in these states, however, it is not a party to the pleadings in the cause.

Then, as we have seen, the right to an office has frequently been determined by our courts in an ordinary civil suit between private parties. This seems quite in accord with our system of jurisprudence, which seeks, as far as possible, to confine litigation to the very parties interested in the controversy.

We think, therefore, that, for the recovery of an office, a suit may be brought directly by the claimant against the person in possession, without resort to an information in the nature of a *quo warranto*.

We are of opinion, however, that the plaintiff had no right to an injunction, either to restrain the defendant from exercising the rights and discharging the duties of county judge, or of enjoying its emoluments during the pendency of the suit for the office. It is to the interest of the public that the office should be filled, but it would be rendered vacant, if, by means of an injunction, the officer *de facto* were absolutely prohibited from discharging its duties, or were robbed of every inducement to do so, by having all compensation for his services absolutely withdrawn from him. High on Inj., sec. 1312, et seq.

The plaintiff has his remedy at law by suit for the money received by his antagonist whilst acting as *de facto* judge, and cannot resort to the extraordinary process of injunction, which, whilst it is not necessary for his protection, works a hardship and an injury to the public.

We do not think there is anything in the special exceptions sustained to the amended petition. The plaintiff showed the best

of reasons why he did not qualify as county judge. He showed that he was prevented from so doing by the wrongful acts of the defendant himself, who was in a position where he possessed the power to prevent the plaintiff from qualifying. He could hardly qualify when his certificate of election was withheld from him by the county commissioners, influenced, as he alleged, by the defendant; when no officer would administer the oath to him or receive his bond. He offered, in his amended petition, to file the proper oath and bond, and this was all that could be required of him.

We think that the petition was good against all the objections taken to it upon demurrer and exceptions, as relied upon in this court, and the judgment of the court below is accordingly reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 26, 1886.]