UHR v. BROWN, Mayor et al. (No. 5828.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1916. On Motion for Rehearing, Jan. 24, 1917.)

1. MUNICIPAL CORPORATIONS ☞184(1) — POLICE DEPARTMENT — DE JURE OFFICERS — CHARTER AND ORDINANCE.

Under the commission charter of San Antonio, giving the commissioner of police sole power to nominate all employés in that department, and an ordinance creating a police department consisting of the mayor, the police commissioner, and one captain of detectives, 15 detectives, etc., who before entering upon the duties of their offices and within five days after confirmation of their appointment should subscribe the oath of office, give bond, receive their commissions, and thereupon to enter upon the duties of such offices and receive the compensation specified therefor, and providing that persons theretofore appointed to the corresponding offices and then employed or acting de facto, or otherwise in the performance of such duties, should hold such offices and perform their duties regardless of any defects in their appointment or qualification, to serve until their successors should be appointed and commissioned, persons appointed as policemen previous to the ordinance, whose appointments were never confirmed as required by the charter then in force, and designated by the ordinance as captain of detectives and as a detective, had no legal title to such office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 488–490; Dec. Dig. ☞184(1).]

2. OFFICERS ☞13, 95—DE FACTO OFFICERS—COMPENSATION—AWARD AS CONFIRMING APPOINTMENT.

A de facto officer can demand pay for his services, so that a vote to give him such compensation would not have the effect of appointment, confirmation, and qualification.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 15, 134, 139; Dec. Dig. ☞13, 95.]

3. MUNICIPAL CORPORATIONS ☞184(1)—POLICE DEPARTMENT—"DE FACTO OFFICERS."

Persons appointed as policemen and thereafter designated as a captain of detectives and a detective respectively, and who, under an ordinance creating a police department, were designated to such offices and thereafter discharged the duties of such offices, though not de jure officers because the provisions of the ordinance investing them with title conflicted with the charter provisions giving the police commissioner sole power of appointment in his department, but who are recognized by the department as officers and received pay as such, were "de facto officers."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 488–490; Dec. Dig. ☞184(1).

For other definitions, see Words and Phrases, First and Second Series, De Facto Officers.]

4. MUNICIPAL CORPORATIONS ☞185(3)—DE FACTO OFFICERS—REMOVAL.

San Antonio Charter, § 17, providing that any appointive officer may be removed only by a majority vote of the commissioners on charges preferred in writing and after a public hearing thereon by the commissioners, did not protect de facto officers, and they must surrender possession to any duly appointed and confirmed to such offices as prescribed by an ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 495; Dec. Dig. ☞185(3).]

5. OFFICERS ☞82 — POLICE DEPARTMENT — COMPENSATION—INJUNCTION.

After nominees of a police commissioner, vested with the sole power to nominate to office in a police department, were confirmed by the commissioners and qualified and received a commission and the salary incident to the office, equity would not aid de facto officers to restrain such appointees from discharging their duties or receiving their salary.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. ☞82.]

6. MUNICIPAL CORPORATIONS ☞184(1) — POLICE DEPARTMENT—INTERFERENCE WITH POLICE COMMISSIONER—RIGHT TO APPOINT.

De facto officers in a city police department, designated by an ordinance and discharging the duties of the offices claimed by them, did not interfere with the police commissioner's exercise of his sole right to nominate officers in the police department, where their performance of the duties of their offices did not prevent him from nominating others to such offices, any wrongful motive actuating the other commissioners in refusing to confirm his appointees not being chargeable to such de facto officers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 482, 488–490; Dec. Dig. ☞184(1).]

7. OFFICERS ☞82—INJUNCTION—POLICE COMMISSIONER—INTERFERENCE WITH DUTIES.

The failure of de facto officers serving in the police department under an ordinance to cease performing the duties of and exercising the rights of their offices did not constitute an interference with the discharge of the police commissioner's duties of supervision and the enforcement of police regulations, as their duties did not conflict, and as the commissioner might be presumed to need every subordinate office filled in order to properly conduct his department.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. ☞82.]

8. OFFICERS ☞82 — INJUNCTION — SUBJECTS —PUBLIC OFFICE.

A public officer de jure or de facto in possession of an office is entitled to an injunction to restrain any one disputing his right to it or interfering with his discharge of its duties.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 114; Dec. Dig. ☞82.]

9. MUNICIPAL CORPORATIONS ☞992 — DE FACTO OFFICERS—INJUNCTION—TAXPAYER'S ACTION.

A taxpayer cannot secure the aid of equity to prevent de facto officers from serving and receiving compensation, and the relief which cannot be granted to a taxpayer for the public benefit as well as for his own benefit cannot be granted to commissioner of any city department on the sole ground that he holds such position.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2157; Dec. Dig. ☞992.]

10. OFFICERS ☞119—DUTIES—ACTION.

A public officer, in the absence of a prohibition, has the implied authority to institute suits necessary to the proper and faithful performance of his duties.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 197–206; Dec. Dig. ☞119.]

11. OFFICERS ☞119 — INJUNCTION — PUBLIC OFFICERS—SCOPE OF RELIEF.

In a suit by the police commissioner of a city to enjoin the mayor from approving pay rolls containing the names of a de facto captain of detectives and of a de facto detective, and from appointing any person to office in the police department, and to cancel any orders pre-

viously issued appointing or assigning officers to that department, an order requiring the mayor to cancel such orders was too broad, as requiring the cancellation of orders prior to the time plaintiff was elected police commissioner, and which could not have constituted an infringement of his rights to appoint to office in the police department.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 197–206; Dec. Dig. ⬦⟾119.]

## On Motion for Rehearing.

12. MUNICIPAL CORPORATIONS ⬦⟾184(1)—POLICE DEPARTMENT—DE FACTO OFFICERS.

Under an ordinance designating a captain of detectives and a detective notwithstanding any defect in their appointment or qualification, such officers, upon possession of the offices and the · discharge of their duties, became de facto officers, as it is the very fact that an appointment is illegally made which furnished a basis for claiming to be a de facto officer.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 488–490; Dec. Dig. ⬦⟾184(1).]

13. MUNICIPAL CORPORATIONS ⬦⟾1027—ACTION—SUIT BY POLICE COMMISSIONER—PERSONAL CAPACITY.

A suit by a city's police commissioner to restrain interference with his right under the charter to appoint to offices in the police department is a suit brought by him in his individual capacity, as distinguished from a suit by him in his official capacity on behalf of the city in aid of the enforcement of police regulations.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2198; Dec. Dig. ⬦⟾1027.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action for an injunction by Robert F. Uhr against Clinton G. Brown, Mayor of the City of San Antonio, J. W. Carruthers, Joe White, and others. Judgment for plaintiff as to all except the named defendants, and he appeals. Reformed and affirmed.

Frank H. Wash, Scott & Dodson, and Ryan & Matlock, all of San Antonio, for appellant. Geo. R. Gillette, R. G. Harris, and K. J. McMillan, all of San Antonio, for appellees.

MOURSUND, J. This is an appeal from an order refusing to grant certain relief by temporary injunction in favor of Robert F. Uhr, fire and police commissioner of San Antonio, suing also as a taxpayer, in a suit against Clinton G. Brown, mayor of said city, E. L. Ankerson, Lonnie Crow, R. E. Delaney, Adolph F. Kohr, J. W. Carruthers, Joe White, and L. Eckhardt. The court granted plaintiff an injunction against all the defendants except Carruthers, White, and Eckhardt, and upon this appeal complaint is only made by plaintiff of the refusal to grant him all the relief he asked against Brown, and the failure to grant any relief against Carruthers and White. His assignments also embrace Eckhardt, but, as the latter has left the police service, appellant waives his assignments as to him. We will, therefore, in stating and discussing the case, confine ourselves to the controversy between plaintiff and Mayor Brown, Carruthers, and White.

Plaintiff alleged that the executive administrative powers, authorities, and duties were distributed among five departments by the charter of the city of San Antonio, one of which was that of fire and police, and that he had been duly elected as commissioner of said department, and under the charter had under his special charge the enforcement of all fire and police regulations in said city, and was vested with the sole power to propose and nominate all employés in said department, and that the mayor had no power to propose, nominate, or appoint employés therein; that Carruthers and White were pretending to be employés in said department, and assumed to act as officers therein, claiming their right to do solely upon a pretended nomination and appointment therein by Mayor Brown; that plaintiff as commissioner of said department has notified said defendants that they were pretending to be employés without authority of law, and were usurpers and trespassers in said department, and demanded that they forthwith cease to exercise any authority so unlawfully assumed; that they had defied his authority to remove them, and that they remain therein by force of arms, still unlawfully pretending to be employés therein; that said defendants have never been nominated to employment in said department by any commissioner thereof; and that their wrongful and illegal conduct has hindered and interfered with plaintiff in the discharge of the duties imposed upon him as commissioner, and that unless restrained they will continue to hinder and interfere with him, and that he has no adequate remedy at law, and no adequate relief save through writ of injunction. He prayed that they be restrained from pretending or assuming to be employés in said department, and from interfering with plaintiff in the supervision and control thereof, and in the enforcement of the public regulations of said city.

Plaintiff sought to restrain Mayor Brown from approving any pay rolls with the names of Carruthers and White thereon, and from nominating or appointing any person to any employment connected with the department of fire and police, and from assigning any person to duty in said department; also that he be commanded to forthwith cancel, recall, and withdraw every order and instruction, verbal and written, which he has heretofore issued, given, or extended purporting to propose or nominate any person to any employment in said department or assigning any person to any duty in said department.

Defendants all answered together by general demurrer, general denial, and specially that defendants (except Mayor Brown) are actually engaged in performing the duties of regular officers in the police department, and that said Carruthers has been so engaged since December 20, 1914, and said White

since January 13, 1913; that they have performed the regular duties of police officers, have been recognized as such by the officials and citizens, have duly qualified for such officers, been commissioned by the mayor, received regular clothing allowances dispensed to police officers, and received the compensation provided for the positions which they hold. They then pleaded certain ordinances which they claimed created a police department.

Said defendants further alleged that if they are not officers de jure, they are at least officers de facto, and should be permitted to serve until their successors are nominated and confirmed according to law.

Plaintiff, by supplemental petition, alleged that prior to May 4, 1916, there was never an ordinance duly enacted by the city council creating any officers in the police department, except that of chief marshal, two assistant marshals, and one police matron; that prior to May 4, 1916, there was no legally created office available and to which defendants could have been appointed at the respective dates they plead they were appointed; that the present commission charter came into effect June 1, 1915, since when only the police and fire commissioner could make nominations for positions in said department, and such nominations required confirmation by a majority of the commissioners before any right or title to office was conferred, and that defendants were never so nominated or confirmed; that defendants have no status as de facto officers. Plaintiff further pleaded the holding in the Coultress Case, 169 S. W. 919, as binding law to the effect that no office of city policeman existed in San Antonio between July 17, 1911, and May 4, 1916. Defendants denied plaintiff's said allegations, and alleged that the decision in the Coultress Case is not conclusive or decisive as to the law of this case.

The trial court, after hearing evidence, granted an injunction against Mayor Brown as prayed for, with the exception that he did not restrain him from approving pay rolls and signing warrants in favor of Carruthers and White. He refused to grant plaintiff any relief as against Carruthers and White.

Carruthers' only commission, dated December 21, 1914, was "to the office of policeman of the city of San Antonio, Tex." He also had a letter, signed Albert Steves, Commissioner of Fire and Police, dated February 16, 1916, advising him that he has "this day been placed in the position of captain of detective department under Chief F. H. Lancaster," effective March 1, 1916, and directing him to put himself under orders of Chief Lancaster as "per our conversation of this date." He testified he never worked as a patrolman; when he got the commission he reported to Chief Lancaster, who told him to go to work as a detective, which he did until February 20, 1916, when he assumed the duties of captain of detectives. He also testified that a policeman's pay is $70 per month, but he was paid $85 until he got $100 as captain of detectives, which salary was subsequently raised to $125. This was done upon Commissioner Uhr's recommendation, and the increase began on June 1, 1916. Uhr was elected police and fire commissioner of the city of San Antonio on April 3, 1916. He is a taxpayer of said city. Carruthers wears no uniform, but has a regular policeman's badge; he has no regular beat, comes and goes as he pleases, and is under Chief Lancaster's orders.

White's only commission, dated June 16, 1913, was also "to the office of policeman of the city of San Antonio." He was transferred to the detective department by Mr. Miller, then chief of detectives; wears no uniform, but has a badge; consults Chief Lancaster and works under Carruthers' orders. He received $70 per month, and clothing allowance. The names of Carruthers and White have been carried on the pay rolls since their entry into the department, and ordinances have been passed each month providing for payment of the amounts set out in the pay rolls. Commissioner Uhr voted "nay" on the passage of all pay rolls since he has been in office except the one for July, 1916. He voted "aye" on making the appropriation ordinance to pay that pay roll. This pay roll contained the names of Carruthers and White. Said ordinance provided that no moneys should, however, be paid out except on the approval of the commissioner in charge of the department, or the head of a division in the department. All pay rolls since Uhr became commissioner have been certified to by F. H. Lancaster, city marshal of said city, and none were certified to or approved by Uhr. On September 1, 1916, Commissioner Uhr wrote Carruthers, as captain of police, that his services were no longer required in the police department, and on September 4, 1916, wrote Carruthers and White they had no legal authority to act as an employé in the police department, and demanding that they surrender all city property and cease to pretend to act as an employé in said department. They paid no attention to these letters. Mr. Uhr never gave Carruthers any orders. White testified that a few days before the trial Mr. Uhr, while acting in the capacity of judge in the police court, told him to go ahead and enforce the law and arrest all speeders. The appointments of Carruthers and White to the office of policeman were never confirmed by the city council, and after the commission amendments were adopted no commissioner of fire and police ever nominated either of them to any office or employment in the department of fire and police. At the times when they entered the police service, the department contained 150 or 160 men, and at no time thereafter did it contain as few men as 101. The member-

ship changed constantly, owing to resignations and removals, and at the time of the trial probably half of the men in the department in June, 1913, were still serving.

On March 2, 1903, an ordinance was passed providing that the police force shall consist of one chief marshal, two assistant marshals, one police matron, and such detectives and unmounted patrolmen as the mayor and city council may deem necessary.

Chapter 58 of the criminal ordinances, comprising all ordinances in force August 7, 1899, provides that the police force will consist of the following grades: City marshal (ex officio chief of police), assistant marshals, detectives, and patrolmen.

An ordinance passed December 4, 1905, provides:

"The police department of said city shall hereafter consist of one city marshal, one first and one second assistant marshal, and not to exceed 53 policemen."

This ordinance repealed all ordinances and parts of·ordinances in conflict therewith.

On August 5, 1907, the number of men serving in the police department was increased by ten. On September 3, 1912, it was provided by ordinance that 26 patrolmen and 12 mounted policemen be added to the regular force.

[1] On May 4, 1916, an ordinance was passed and approved creating a police department "which shall consist of the mayor and commissioner of fire and police as ex officio members, together with the officers enumerated in section 2, who are as follows: One city marshal or chief of police, one inspector of police, three captains of police, one captain of detectives, one lieutenant of motorcycle police, three desk sergeants, one night detective sergeant, one chauffeur examiner, one police matron, two police women, 15 detectives, and 160 policemen. This ordinance provided that each should hold an office of a designated number, with a corresponding metal badge, and that a continuous record should be kept by the chief of police of all such numbers and the persons holding same. Section 4 of said ordinance reads as follows:

"Each of said officers mentioned or referred to in section 2 hereof, before entering upon the duties of such office, and within five (5) days after confirmation of his appointment shall take and subscribe the oath of office, give bond for the due performance of the duties thereof, and have and receive a commission for such office, and thereafter, and not before, he shall enter upon and perform the duties of such office, and receive from the city of the compensation specified therefor, all as provided by law, charter or ordinance: Provided, however, that each person heretofore appointed to any such office, or paid compensation by the city to perform any service corresponding to the duties of any such office, and now employed or acting de facto or otherwise in the performance of such duties, or hereafter to be appointed and commissioned to any such office, shall hold such office and perform the duties thereof, including full power and authority as a public officer, subject to all lawful ordinances or·regulations now existing or hereafter to be provided; and no omissions or defects in connection with the appointment or qualification of any person now serving, or hereafter appointed and commissioned to serve, on said police force in any of said offices herein mentioned or referred to, shall be held to affect the legality of his acts as such officer, but such omissions or defects, if any, shall be supplied or corrected as soon as practicable; nor shall the term of office of any person now· acting or serving as aforesaid in any such capacity be held to be either extended or diminished by this ordinance or anything therein contained, but, except as otherwise provided by law or charter, each such person shall continue to serve in such capacity and as such officer until his successor shall have been duly appointed, confirmed, qualified and commissioned, and during the period of such service shall receive from the city the compensation fixed for such office."

Section 6 repeals section 2 of chapter 39, Book of Revised Criminal Ordinances, passed and approved August 7, 1899, and all other ordinances or parts of ordinances in conflict with such ordinance of May 4, 1916.

Appellant contends that the court erred in refusing to restrain Carruthers from pretending to occupy the office of captain of detectives in the police department, against the protest of appellant, as commissioner of said department, and makes a similar contention in regard to White's occupancy of the office of detective in the police department. Various propositions are submitted under the two assignments, many of which relate to the status of Carruthers and White prior to the · passage of the ordinance of May 4, 1916. Whether or not either of them had any title to the office of policeman is immaterial in determining whether they should be restrained from pretending to occupy the offices, respectively, of "captain of detectives" and "detective," which offices were created by the ordinance of May 4, 1916. However, we call attention to the fact that the office of captain of detectives had no legal existence prior to the ordinance of May 4, 1916, and while there was a prior ordinance which mentioned "detectives," it was subject to the objection pointed out in the Coultress Case, as well as superseded by subsequent ordinances taking the place of same and repealing all ordinances in conflict, in which subsequent ordinances the term "detectives" does not appear. It is also clear that the appointments of Carruthers and White, made by Mayor Brown, were to the office of policeman. These appointments were never confirmed by the council as required by the charter then in force, and White's appointment was more than two years old, and to an office to which there was no succession. They never were de jure policemen, but, if they had been, such fact would not confer title to the offices now claimed by them. We hold that Carruthers has no legal title to the office of captain of detectives created by the ordinance of May 4, 1916, and White has no legal title to one of the offices of detective created by said ordinance. Neither of them was ever nominated by Commissioner Uhr, who has the sole power to nominate

persons to said office, and both nomination and confirmation are absent as well as qualifying in the manner pointed out in the ordinance, which thereby is made a prerequisite to the right to "enter upon and perform the duties of such office." Dillon on Municipal Corporations, §§ 385, 395.

[2] We attach no importance to the fact that ordinances were passed appropriating money to satisfy pay rolls containing the names of these men. It has been held in this state that a de facto officer can demand pay for his services, and there is much authority to the same effect. We will not concern ourselves with the side issue as to the true rule to apply in such cases, for these men in good faith performed the services for which they were paid by July ordinances, for which Uhr voted, and there were no de jure claimants of the offices and the salary incident thereto, so it clearly appears that they were entitled to receive pay, and a vote to give it should not be given the effect of appointment, confirmation, and qualifying.

[3] We are of the opinion, however, that Carruthers and White are de facto officers. In the ordinance creating the offices it was undertaken to place these men in such offices because they had theretofore discharged duties corresponding to those to be discharged by the holders of such offices. Carruthers had theretofore been known as captain of detectives, and White as a detective, and they proceeded after such ordinance was adopted to discharge the duties of the offices therein created. That provision of the ordinance undertaking to invest them with title to the offices is invalid because it conflicted with the charter provision which gives Mr. Uhr the sole power to nominate employés in his department. In this connection we wish to say that the other provision of the ordinance undertaking to make offices therein named continuations of the offices of the same name theretofore existing is not involved in this case, and we express no opinion concerning the same, for the offices claimed by Carruthers and White could not be continuations, as there were no such offices legally in existence when the ordinance was passed. Both Carruthers and White discharged the duties of the offices claimed by them from May 4, 1916, to September 1, 1916, without objection from any source, so far as is disclosed by the record. They were recognized by the public and their associates in the police department as officers, and received pay as such. With full knowledge that Carruthers was claiming the office of captain of detectives the salary of such office was raised on July 1, 1916, at the suggestion of Commissioner Uhr, and Mr. Uhr's first letter to Carruthers shows that he recognized Carruthers as the holder of the office and sought to remove him. We think the evidence sustains a finding that these men were the de facto holders of the respective offices of "captain of detectives" and "de-tective" created by the ordinance of May 4, 1916, and so held said offices at the time Uhr wrote them that they were acting without authority, and demanded that they cease to perform duties in the police department.

[4] Appellant contends that if Carruthers and White are only de facto officers, section 17 of the charter, which relates to the removal of officers and employés, does not apply to them. Said section provides:

"And any appointive officer or employé may be removed or discharged only by a majority vote of the commissioners on charges preferred in writing and after a public hearing on such charges by said commissioners."

This section gives rights to duly appointed officers and employés, and not to those who have no legal title to offices. It will not protect de facto officers who must surrender possession as soon as men are duly appointed and confirmed to such offices and qualify as prescribed by ordinance. To hold such section of the charter applicable to de facto officers would amount to deciding that such officers were entitled to a two-year term, unless charges were preferred, a trial had, and such charges sustained. If appellees are entitled to win in this case, their rights must rest upon other grounds than said charter provision.

Having held that Carruthers and White are de facto officers and not entitled to the rights given by section 17, we will now consider the question presented by appellant's said assignments of error. The propositions in appellant's brief fully cover all questions relating to the status of Carruthers and White, but it appears to be taken for granted that if they are de facto officers Uhr is entitled to the relief prayed for by him. Appellees deny that such would be the result, and we have therefore considered the various theories deducible from plaintiff's pleadings upon which he relies for relief against said appellees. Plaintiff's allegations are of a rather general character, but may be considered as presenting the following theories: (1) That Carruthers and White are interfering with appellant's rights and duty to nominate all employés in the fire and police department; (2) that they interfere with him in the discharge of his duties with respect to the enforcement of police regulations and supervision of the department; (3) that in his capacity as head of the department, or as a taxpayer, he is entitled to the aid of equity to eject all persons from the service who are not de jure officers, and restrain the payment of salaries to them.

[5, 6] We have heretofore held that the commissioner of fire and police has the sole right of nominating employés in his department, and have sustained him in his suit to prevent interference with such right on the part of the mayor. Brown v. Uhr, 187 S. W. 381; Uhr v. Lambert, 188 S. W. 946. But are Carruthers and White interfering with such right? It is clear that their dis-

charge of the duties of the offices claimed by them, and their having the status of de facto officers, does not prevent Commissioner Uhr from nominating men to the offices said defendants claim. If his nominees are confirmed by the commissioners and qualify and receive a commission, the salary incident to the offices would be paid them, and equity would not lend its aid to Carruthers and White to restrain such appointed persons from entering upon the discharge of the duties of the office or restrain the payment of salary to them. High on Injunctions, § 1313; Stamps v. Tittle, 167 S. W. 776. The trouble lies in the fact that the other commissioners refuse to confirm appellant's appointees, and the charter fails to provide any remedy for the deadlock thus caused. We fail to see any way in which the discharge of the duties of the offices by these defendants interferes with appellant's right to nominate men for such offices. There is, of course, a probability that the remainder of the commissioners will be more apt to confirm appointments if no one is discharging the duties of the office than if some one is discharging the same; but this probability furnishes no basis for holding that the discharge of the duties of the offices by defendants interferes with appellant's right to nominate. He has such right, and when he nominates he has performed his duty, and if any wrongful motives actuate the other commissioners in refusing to confirm his appointees, the same cannot be charged up to the men serving in the department.

[7, 8] We will next consider whether appellant has shown that Carruthers and White are interfering with him in the discharge of his duties of supervision and enforcement of police regulations. He fails to allege or prove any specific acts of interference unless the refusal to quit the service at his request constitutes such interference. In other words, does the failure of a de facto officer, serving in the police department, to cease performing the duties of and exercising the rights of an office constitute an interference with the discharge of duties by the head of the department? In determining the question it must be borne in mind that no duty is imposed upon the commissioner, by charter or ordinance, to prevent de facto officers from performing services. Their performance of services and exercise of the rights incident to the office cannot be an interference with the duties resting upon their superior officer of enforcing police regulations and supervising the police department. The duties of the offices do not conflict, and the performance of the duties of one office cannot constitute an interference with the performance of the duties of the other. The courts have been very liberal to de facto officers on account of the necessity of having official duties performed.

This court, in the case of Callaghan v. Mc-Gown, 90 S. W. 319, said:

"That a public officer, either de jure or de facto, in possession of an office, is entitled to an injunction to restrain one who disputes his right to it or any one else from interfering with him in the discharge of his official duties, is too well settled to require discussion."

Our Supreme Court, in the case of Mc-Allen v. Rhodes, 65 Tex. 353, used the following language:

"We are of opinion, however, that the plaintiff had no right to an injunction, either to restrain the defendant from exercising the rights and discharging the duties of county judge, or of enjoying its emoluments during the pendency of the suit for the office. It is to the interest of the public that the office should be filled, but it would be rendered vacant, if, by means of an injunction, the officer de facto were absolutely prohibited from discharging its duties, or were robbed of every inducement to do so, by having all compensation for his services absolutely withdrawn from him. High on Inj. § 1312 et seq. The plaintiff has his remedy at law by suit for the money received by his antagonist whilst acting as de facto judge, and cannot resort to the extraordinary process of injunction, which, whilst it is not necessary for his protection, works a hardship and an injury to the public."

In the case of the State v. Hoff, 88 Tex. 297, 31 S. W. 290, it was held that the district judge had the discretion to deny leave to file an information in quo warranto, upon the relation of a citizen who claimed no right in himself or another, to remove de facto municipal officers, basing such holding upon the ground that relator's suit was purely in the interest of the public, or at least should be, and that the public interest would not be subserved by depriving the town of officers until another election could be held. These cases illustrate the importance attached by the courts to having the duties of offices performed by some one in the interest of the public. The necessity for having the duties of "captain of detectives" performed, and especially of detectives, when there are 14 others, is, of course, not comparable with the necessity for having the offices filled which were involved in the last-cited case; still there is a presumption that the offices were necessary and proper, and the public being interested in having the duties thereof performed until de jure officers are secured, it appears to us that it could not consistently be held that the performance of such duties constituted an interference with the discharge of his duties by the head of the department who may be presumed to need every subordinate position filled in order to properly conduct the department.

[9] The decisions in the cases referred to also demonstrate that a taxpayer cannot secure the aid of equity to prevent de facto officers from serving and receiving compensation, so the fact that appellant also sues as a taxpayer does not aid him. See, also, High on Injunctions, §§ 1314, 1315.

We are also of the opinion that the relief which cannot be granted to a taxpayer for the public benefit as well as his own benefit

cannot consistently be granted to the head of a department upon the sole ground that he holds such position, and the defendants are only de facto holders of subordinate positions. There being no express authority given him to oust de facto officers, his claim must rest upon the general proposition that, as head of the department, it is his duty to protect the public from the payment of salaries to persons not legally entitled thereto. But the rule is well settled that the payment of salary to a de facto officer will not be enjoined at the suit of a taxpayer or the adverse claimant, and the same rule would be applicable, we think, to a suit by the head of a department.

[10] It is, of course, well established that a public officer, in the absence of a prohibition, has the implied authority to institute suits necessary to the proper and faithful performance of his duties. We do not understand that appellant's petition attempts to assert a cause of action in aid of the enforcement of police regulations, for no such regulations are described therein. It may also be doubted whether one of the commissioners could assert the implied authority to bring such suits without the consent of a majority of the commissioners, in view of the proviso in paragraph 8 of section 7 of the charter.

We conclude that the court did not err in refusing to grant the relief prayed for against Carruthers and White, and therefore overrule the first two assignments of error.

The third and fourth assignments must also be overruled.

[11] Appellees present a cross-assignment of error complaining of that part of the court's order requiring Mayor Brown to "forthwith cancel, recall, and withdraw every order and instruction, verbal or written, which he had theretofore issued, given, or extended, purporting to propose and nominate any person to any employment in said department or assigning any person to any duty in said department." It is contended that this part of the decree is too broad, in that it affects the rights of Carruthers and White, as well as many other hold-overs in the police department originally appointed by Mayor Brown, who are not parties to this suit. We think this order is entirely too sweeping, for it imposes a burden upon the mayor to cancel or attempt to cancel appointments made prior to the time when appellant was elected commissioner, and even those made at a time when the mayor had the right to appoint and which could not have constituted any infringements upon appellant's rights. We think the injunction should at least be modified so as to apply only to appointments, instructions, and orders given since the election and qualification of appellant as commissioner of fire and police. The trial court's order will be reformed to that extent, and, as so reformed, the judgment will be affirmed.

191 S.W.—25

## On Motion for Rehearing.

Appellant contends that Carruthers and White each found an office and took possession because no one else was there, entirely overlooking, in this portion of the argument, the fact that by the ordinance of May 4, 1916, the mayor and commissioners, by solemn legislative act, undertook to invest said parties with the offices claimed by them. So far as this record discloses, appellant may have voted for such ordinance, but we have treated the questions involved upon the assumption that he did not vote for the same, and therefore did not pass upon the question whether such an ordinance if voted for by appellant and the other commissioners would take the place of a formal nomination and confirmation.

[12] Appellant also contends that said portion of the ordinance having been held invalid by us it would follow that Carruthers and White could not be de facto officers. It is the very fact that an appointment is illegally made which furnishes a basis for a person to claim to be a de facto officer, for if it is legally made, the officer is safe from removal even by quo warranto proceedings. Said ordinance undertakes to place these parties in the offices respectively claimed by them, and to cure any defects in their appointment or qualification, and we think that such invalid appointment, followed by the possession and recognition shown by the facts set out in our opinion, constituted them de facto officers. These facts are not attacked by appellant, but some of the most important are overlooked in discussing the issues.

[13] Considerable stress is laid upon the theory that appellant is suing to enforce police regulations, and it is contended that an ordinance creating a police department is part of the police regulations of the city. From this statement it might be inferred that this is a suit to enforce the ordinance of May 4, 1916, which requires that persons shall comply with certain requisites before entering upon the discharge of duties. As pointed out in our former opinion, plaintiff's petition fails to set out any particular police regulation, or ordinance in the nature of a police regulation, sought to be enforced. It is therefore clear that if the case be viewed as one brought by appellant on behalf of the municipality to enforce police regulations the petition states no cause of action. But suppose the petition contained the necessary averments. The charter does not give any commissioner the express power to bring suits which he may deem necessary or proper to fulfill duties intrusted to him, and if such power exists it would be an implied one, and be subject to the proviso mentioned in paragraph 8 of section 7 of the charter. We are unable to see how section 56 can be construed to abolish the proviso which subjects each commissioner to the direction and control of

a majority of the commissioners in so far as implied powers are concerned.

We are still of the opinion that a suit by appellant to restrain interference with his right to appoint is a suit brought by appellant in his individual capacity, and distinguishable from a suit by him in his official capacity on behalf of the city to aid in the enforcement of police regulations.

Appellant again urges that there is a difference between the recognition accorded to a de facto officer so far as the public is concerned, and that accorded him when he is undertaking the enforcement of rights in himself. It appears to us that appellant fails to distinguish cases in which a person is suing for the enforcement of rights dependent upon his legal title to the office, and cases in which courts of equity protect a person in the possession and enjoyment of emoluments of an office, not because he shows he has legal title, but upon proof showing that he is a de facto officer. No effort is made to explain away the decisions in the McAllen-Rhodes and Callaghan-McGown Cases, which are very much in point because this is a resort to equity for the purpose of ousting de facto officers, and it is not even alleged that the remedy of a quo warranto proceeding was not available to appellant.

We are not sure that we understand what point is sought to be made in the concluding paragraph of the argument. The case referred to (Stanfield v. Bexar County, 28 S. W. 114) was one in which the office had been legally abolished, and it was held that Stanfield could not recover for services performed after the office had been abolished. That case throws no light upon the issues involved in this case, for there is no contention by appellant that the offices of captain of detectives and detective had no legal existence. If appellant intends to contend that a de facto officer could not sue to recover the salary of an office, because thereby he would necessarily put his title in issue, we agree that there is much authority for such contention (see note to 32 L. R. A. [N. S.] 949); and it is entirely in harmony with the holdings of our Supreme Court to the effect that the salary is an incident to the title and not to the possession of and discharge of the duties of an office, and while in the case of Houston v. Albers, 31 Tex. Civ. App. 643, 73 S. W. 1085, it was held that a de facto officer is entitled to compensation for services performed, we have found no case by the Supreme Court which so holds. If it be conceded that such an officer is not entitled to compensation and cannot exact it through the courts, considerable force would be added to the contention of Carruthers and White to the effect that the adoption of an ordinance, voted for by appellant, providing for paying them would constitute appointment and confirmation to the offices designated in the pay roll as held by

them. But aside from such question, we think it is immaterial to any issue in this case whether a de facto officer can sue for and recover salary or compensation. This is not such a suit, but a suit in equity to restrain de facto officers from performing duties and from being paid, and is governed by the decisions relating to such suits.

The motion for rehearing is overruled.